## UNITED STATES *v*. FOSTER.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF MASSACHUSETTS.

No. 838.   Argued April 13, 14, 1914.—Decided May 4, 1914.

Where the case is one of statutory construction, consideration of the statute becomes necessary, and if the validity of departmental regulations is involved, a construction of the statute authorizing the head of the Department to make them is also necessary, and this court has jurisdiction under the Criminal Appeals Act of 1907 to review the judgment sustaining a demurrer to the indictment.

The theory of the act of March 3, 1883, is that every postmaster shall receive a salary dependent upon and regulated by the amount of business done at his office as represented by normal and natural—not unlawfully induced—sales of stamps.

Under § 161, Rev. Stat., authorizing heads of the Executive Departments to prescribe regulations not inconsistent with law, the Postmaster General has power to prescribe regulations requiring postmasters to make proper returns of sales of stamps at their respective offices; and such regulations have the force of law.

An indictment charging a postmaster and others with conspiring under § 37, Penal Code, to violate §§ 206 and 208, Penal Code, by the sale and purchase of stamps in large quantities to be used at other post offices so as to fraudulently increase his salary, and also charging violation of regulations of the Department in that respect, is sufficient.

THE facts, which involve the jurisdiction of this court under the Criminal Appeals Act of 1907 and the construction of statutes regulating the pay of postmasters and the power of the Postmaster General to make regulations in regard thereto, are stated in the opinion.

*Mr. Assistant Attorney General Wallace* for the United States.

*Mr. Philip Rubenstein*, with whom *Mr. Timothy Howard* was on the brief, for defendants in error:

This court has no jurisdiction under the act of March 2, 1907. No statute was construed or interpreted by the court below. *United States* v. *George*, 228 U. S. 14, 19.

The whole case resolved itself into the question of the power to enact the regulation. If this be a construction by the lower court of Rev. Stat., § 161, it does not constitute a construction of the statute upon which the indictment is founded. *United States* v. *Keitel*, 211 U. S. 370, 378; *United States* v. *Patton*, 226 U. S. 525, 535.

The words "gross receipts" were not interpreted. The only question was whether there was power in an administrative officer to make a regulation limiting its scope.

The regulation is beyond the power of the Postmaster General to enact, and accordingly is invalid. The regulation is inconsistent with law, and in making it the Postmaster General has attempted to legislate. This regulation proposes to base the salary of the postmaster upon

gross receipts less unusual sales; in other words, upon something less than gross receipts. He has no right thus to change the method which Congress has clearly provided for fixing salaries. *United States* v. *George,* 228 U. S. 14; *United States* v. *Eaton,* 144 U. S. 687; *Morrill* v. *Jones,* 106 U. S. 466; *Williamson* v. *United States,* 207 U. S. 425.

Neither executive officers nor the appointing power can, during the service of an officer, either increase or diminish a salary fixed by statute. *Glavey* v. *United States,* 182 U. S. 595, 601; *United States* v. *Wilson,* 144 U. S. 24.

Many cases in that connection have been decided in the Court of Claims. *Rush* v. *United States,* 35 Ct. Cls. 223; *Andrews* v. *United States,* 47 Ct. Cls. 51; *Adams* v. *United States,* 20 Ct. Cls. 115, 117; *Geddes* v. *United States,* 38 Ct. Cls. 428; *Whiting* v. *United States,* 35 Ct. Cls. 291; *Sherlock's Case,* 43 Ct. Cls. 161; *Jacobs* v. *United States,* 41 Ct. Cls. 452.

Other cases in which the validity of departmental regulations have been considered are: *In re Page,* 128 Fed. Rep. 317; *Borden* v. *United States,* 132 Fed. Rep. 205; *United States* v. *Symonds,* 120 U. S. 46; *Patterson* v. *United States,* 181 Fed. Rep. 970; *Bruhl* v. *Wilson,* 123 Fed. Rep. 957; *Hoover* v. *Salling,* 110 Fed. Rep. 43; *Bruce* v. *United States,* 202 Fed. Rep. 100.

Sometimes legislation provides for departmental regulations to care for details of administration of the particular legislation and in aid of it. The regulation in issue is not of that kind. It is the expression of the views of a particular administrative officer as to salaries to be paid to second-class postmasters. The regulation is not supplementary to the statute, but inconsistent with it.

If the regulation is invalid the conspiracy to do acts prohibited therein is not a conspiracy to defraud. *United States* v. *Biggs,* 211 U. S. 507, 519, 521; *Williamson* v. *United States,* 207 U. S. 425.

The cases cited by the United States do not sustain its position.

*United States* v. *Johnston,* 124 U. S. 236, 253; *Lewis Publishing Co.* v. *Wyman,* 182 Fed. Rep. 13, 16; *McKee* v. *United States,* 164 U. S. 287, 293; *Brewer* v. *Blougher,* 14 Pet. 178; *Petri* v. *Commercial National Bank,* 142 U. S. 644; *State* v. *Ill. Cent. R. R. Co.,* 92 N. E. Rep. 814; *United States* v. *Antikamnia Co.,* 231 U. S. 654, are not in point.

Mr. Justice McKenna delivered the opinion of the court.

Indictment in two counts for conspiracy to defraud the United States, and to violate certain provisions of the postal laws. The object of the conspiracy and the manner of its execution are in substance, as charged in the indictment in the first count, as follows: Harold A. Foster was postmaster of the United States post-office at North Brookfield, Massachusetts, a second class office. The salary of the office was fixed by the Postmaster General, pursuant to law and the regulations established by him, at $2,000 a year, the salary being based and ascertained upon the gross receipts of the office for the twelve months next preceding the thirty-first of March, 1911. The law required the salary to be adjusted annually, and the next adjustment was required to be made by the Postmaster General in accordance with the gross receipts of the office as shown by the quarterly returns of the postmaster to the Auditor of the Post Office Department for the four quarters next preceding the thirty-first of March, 1912, the readjustment to take effect on the ensuing first of July, 1912. The Postmaster General was required by law and the established regulations in readjusting such salary not to include in the gross receipts of the office the moneys received by the postmaster for the sale of stamps to any person or persons in large quantities to be used in other

post-offices than the North Brookfield office for mailing purposes, or in that office if such matter in the ordinary course would not be deposited for mailing in the latter office.

Frank E. Winchell, of North Brookfield, was the president and general manager of the Oxford Linen Mills, a corporation having its usual place of business at North Brookfield, and William S. Edwards and Harry H. Platt, both of New York, were officers of the Sterling Debenture Company, a corporation having its place of business in New York, and they and Foster, well knowing the premises, conspired to defraud the United States of its money and property by Winchell purchasing from the United States in behalf of the Oxford Linen Mills, with the knowledge, consent and connivance of Foster, quantities of United States postage stamps to be sent to the Sterling Debenture corporation at New York, and Edwards and Platt as its officers were to cause it to use them in the prepayment of postage upon matter to be deposited in the post-office in New York or in some other office with the view and intent, by means of the purchase of stamps as stated, of irregularly and improperly increasing the gross receipts of the North Brookfield post-office for the twelve months beginning on the first of April, 1911, and ending on the thirty-first of March, 1912, and thereby enabling Foster, as such postmaster to make returns to the Auditor of the Post Office Department as a basis for the adjustment of Foster's salary for the fiscal year beginning July 1, 1912, which returns should include the sale of stamps so made to Winchell in addition to the sale of stamps made by Foster to other persons in the regular business of the North Brookfield office, with the intent and view of violating the regulations of the Post Office Department and for the purpose of fraudulently increasing Foster's salary, and with the further intent that such sales should, in violation of the Post Office regulations, be included and

deemed a part of the gross receipts of the North Brook-
field office for the period above mentioned, and be made in
part the basis of the readjustment of Foster's salary. All
the acts done by Foster, Winchell, Edwards and Platt were
done knowingly, wilfully and fraudulently for such pur-
pose, that is, for the purpose of increasing the salary of
Foster by a sum of money in excess of that which he
would be lawfully entitled to receive and to cause such
excessive sum to be paid to him and thereby cheat and
defraud the United States thereof.

In pursuance of the unlawful conspiracy and to effect
its object, on the first of July, 1911, Foster, as such post-
master, made a false return to the Post Office Department
of the gross receipts of the North Brookfield office for the
quarter ending June 30, 1911.

In further pursuance of the conspiracy and to effect its
object, Winchell, on June 2, 1911, at North Brookfield,
sent by registered mail to the Sterling Debenture corpora-
tion at New York a certain package, and also in pursuance
of the conspiracy and to effect its object, Winchell bought
from Foster postage stamps to the value of $200.

In a second count the indictment charges that the
defendants unlawfully conspired to commit an offense
against the United States, specified to be an offense
denounced by § 206 of the act of March 4, 1909, entitled
"An Act to codify, revise, and amend the penal laws of
the United States," c. 321, 35 Stat. 1088, 1128, in that
Foster, as such postmaster, should, in violation of the
section, knowingly and fraudulently increase Foster's
salary and compensation by knowingly and fraudulently
failing to report, in the report of the gross receipts of his
office required by law and the regulations of the Post
Office Department, large and irregular sales of stamps to
be made by Foster to Winchell as president and general
manager of the Oxford Linen Mills, not to be used by that
corporation, or by Winchell, or by any other person for

the mailing of matter at the North'Brookfield office, but to be used for mailing matter at New York or in some post-office other than the North Brookfield office, with the intent and for the purpose of increasing the compensation of Foster as such postmaster. That in pursuance of such conspiracy Winchell, on June 2, 1911, purchased stamps of the value of $200.

In pursuance of the conspiracy and to effect its object, Foster, on the first of July, 1911, made a false return to the Auditor of the Post Office Department of the gross receipts of his office. An overt act by Winchell is charged.

The defendants were duly arraigned and pleaded not guilty, but subsequently withdrew their pleas of not guilty and filed demurrers to the indictment.

The grounds of demurrer were the same as to both counts and were: (1) The facts alleged did not constitute a crime; (2) nor an offense at common law; (3) nor a violation of the statutes or penal laws of the United States; (4) nor a violation of any valid regulation of the Postmaster General; (5) each and every one of his regulations is invalid.

The demurrers to the first count were sustained on the ground expressed by the court in its opinion, that the act of March 3, 1883 (2 U. S. Comp. Stat. 2619) provides that the salaries of postmasters of the second class shall be determined by the gross receipts of the office and that the Postmaster General had no power to qualify the requirement of the law by providing that unusual sales of stamps should not be included in estimating the gross receipts.

In passing upon the demurrers to the second count the court said that the count charged the defendants with a conspiracy to commit "the offense denounced by section 206 of the Criminal Code," that section providing, *inter alia,* that whoever being a postmaster shall, for the purpose of fraudulently increasing his compensation, make a false return, statement, or account to any officer of the

United States shall be punished. The crime denounced, the court said, included "two essential elements, (1) that a return shall be made, which was known to be false; and (2) that such false return shall have been made 'for the purpose of fraudulently increasing compensation.'" And the court observed that there could be no criminality unless a false return was made for the purpose stated, and that it appearing from the indictment that the alleged return made by Foster was to secure for him only what he was legally entitled to receive, he committed no crime under § 206, "and the alleged conspiracy to do so was not a conspiracy to commit the offense denounced thereby."

It will be observed, therefore, that the court held that the indictment charged neither a conspiracy to defraud the United States nor to make a false return, because the object of each conspiracy was to obtain only what Foster was legally entitled to, namely, an increase of salary based upon the gross receipts of his office, and that it was immaterial how they were increased or for what purpose increased.

The case was brought here under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat. 1246, its provision being that this court has jurisdiction on writ of error taken by the United States in criminal cases "from a decision sustaining a demurrer to any indictment where such decision is based upon the invalidity or construction of the statute upon which the indictment is founded." It is, however, contended by defendants in error that this court has no jurisdiction because, it is further contended, the district court gave the same meaning to the statutes upon which the indictment was based as the Government asserted was the correct one and only decided that the regulation of the Postmaster General was beyond his power to enact under Revised Statutes, § 161, upon which section alone he claimed the power. Nor, it is further contended, were the words "gross receipts" interpreted,

"The only question was," counsel say, "whether there was power in an administrative officer to make the regulation limiting its scope." It is further urged that if those words were interpreted the indictment was not founded upon the act of 1883, where they occur.

A lack of jurisdiction is also urged to review the ruling upon the second count, it being based on § 206 of the Criminal Code, the construction or interpretation of which was never in dispute. "Whether it applied or not," it is said, "had to be determined by the validity of the regulation."

We think the contentions are untenable. The court distinctly ruled that the indictment was in technical or formal details sufficient, and the contention of the parties not only submitted for decision the validity of the regulations of the Postmaster General but also the sufficiency and legality of the returns made by Foster under the provisions of the statutes. The court, it is true, gave especial prominence to the regulations, but the effect of the statutes independently of the regulations was necessarily considered. In other words, the court must have considered and decided that a conspiracy to establish a basis for a false return for the purpose of increasing Foster's salary was not prohibited by law; and, besides, a construction of the statutes was necessary to determine the validity of the regulation.

The case being one of statutory construction, a consideration of the statutes becomes necessary.

It is provided by the act of March 3, 1883, c. 142, 22 Stat. 600, that "the compensation of postmasters of the first, second and third classes shall be annual salaries, assigned in even hundreds of dollars, and payable in quarterly payments, to be ascertained and fixed by the Postmaster General from their respective quarterly returns to the Auditor of the Treasury for the Post Office Department . . . to be forwarded to the First As-

sistant Postmaster General, for four quarters immediately preceding the adjustment," according to the gross receipts, the amount of which not only determines the classes but the compensation of the offices within classes.

By § 4 of the act (22 Stat. 602), the Postmaster General is required to readjust the salaries of the first, second and third class at the beginning of each fiscal year. The same section fixed the salary of the postmaster at the Washington Post Office and provided that "in no case shall the salary of any postmaster exceed the sum of six thousand dollars, except in the city of New York, where the salary of the postmaster shall remain as now fixed by law, at eight thousand dollars."

Section 37 of the Criminal Code makes it an offense to conspire to defraud the United States in any manner or for any purpose.

Section 206 of the same code makes it a crime for a postmaster to make a false return, for the purpose of fraudulently increasing his compensation, or to induce or attempt to induce, for such purpose, any person to deposit mail matter in or forward in any manner for mailing at the office where such postmaster is employed, knowing such matter to be properly mailable at some other office.

Section 208 makes it a crime for a postmaster to dispose of stamps outside of the delivery of his office, or to induce or attempt to induce, for the purpose of increasing his compensation, the purchase of stamps, stamped envelopes or postal cards otherwise than as provided by law or the regulations of the Post Office Department.

By § 161 of the Revised Statutes it is provided that "the head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, and the distribution and performance of its business. . . ."

In pursuance of the authority so given, the Postmaster General made the following regulation:

"2. In determining the 'gross receipts' upon which the salary of a postmaster shall be based, stamps, stamped envelopes, and postal cards, sold in large or unusual quantities to any person to be used in mailing matter at other post offices will not be included, whether the sale be made with or without solicitation by the postmaster. When postage stamps or stamped paper are sold in large or unusual quantities, it shall be the duty of the postmaster to inquire into and ascertain whether or not the purchaser intends to use such postage stamps or stamped paper for mailing matter in his office, or other offices; and the fact shall be clearly indicated in his monthly stock report on Form 3240 to the Third Assistant Postmaster General. Upon evidence of neglect of the postmaster to ascertain and report such facts, he will be required to refund the amount of the excess salary and allowances he may have received on account of such sales."

It is manifest from the quoted provisions that their purpose is to fix the salary of postmasters by the normal receipts of their respective offices and thereby keep the offices in relation, and to secure such end quarterly returns are required to be made by each postmaster and each is prohibited under criminal penalty from selling or disposing of stamps, stamped envelopes or postal cards outside of the delivery of his office, or selling or disposing of stamps, etc., otherwise than as provided by law or the regulations of the Post Office Department. In other words, the false returns and designated disposition of stamps are made crimes, and made crimes to secure the purpose of the law to keep the legal measure of the salaries unimpaired and the relation of the offices intact. It may, indeed, be that in one sense the United States would suffer no loss by the derangement of their relation; in another sense the United States would be defrauded. One of the postmasters would fraudulently obtain a greater salary than he was entitled to. But distinctly would the United

States be defrauded under the facts charged in the indictment, the postmaster at New York having a fixed salary of eight thousand dollars. See in this connection *Haas* v. *Henkel*, 216 U. S. 462, 479.

The sole theory of the act of 1883 is that every postmaster shall receive a salary dependent upon and regulated by the amount of business done at his office (*United States* v. *Wilson*, 144 U. S. 24, 28) under normal and natural sales of stamps, not unlawfully induced sales. This being the law, what does the indictment charge?

(1) The salary of the postmaster was to be adjusted in accordance with the returns of the gross receipts. (2) By the law and regulations of the Postmaster General the postmaster was not to include in the gross receipts moneys received from the sale of stamps in large or unusual quantities which were (a) to be used upon matter in some other post office or (b) used upon matter deposited at North Brookfield if in the ordinary and usual course of business such matter would be deposited at some other office. (3) The defendants conspired with Winchell, who purchased from Foster with Foster's connivance large quantities of stamps to be used by the Sterling Debenture corporation for mailing matter at New York or some other office than North Brookfield, and by such purchase to irregularly and improperly increase the gross receipts of the North Brookfield office, and thereby enable Foster to make returns as a basis for the readjustment of his salary in violation of the regulations of the Post Office Department and for the purpose of increasing his salary and thereby cheat and defraud the United States.

The second count charges a violation of § 206 of the Criminal Code, by conspiring, in the manner we have already set out and which need not be repeated.

It is clear from these provisions that it is the gross receipts from lawful sales which are to be the measure of the salary of the postmaster and that unlawfully induced

sales (§ 208), sales made "outside of the delivery of the office" (*Id.*), and sales "otherwise than as provided by law or the regulations of the Post Office Department" (*Id.*), are unlawful sales and regarded as criminal.

It would, indeed, be strange if unlawful and criminal sales were intended to constitute a part of the gross receipts upon which the postmaster's salary should be adjusted, and it would seem clear that to prevent such result the Postmaster General could legally exercise by the regulation under review the power given him by Rev. Stat., § 161. The regulation is purely administrative of the law. (1.) It notifies the postmaster that in the gross receipts of his office stamps in large or unusual quantities sold to be used in mailing matter at other post offices will not be included. This but executed the purpose of the law; adds nothing to it. *United States* v. *Antikamnia Chemical Co.*, 231 U. S. 654; *Lewis Publishing Co.* v. *Wyman*, 182 Fed. Rep. 13. (2.) It requires the postmaster to ascertain and report the intention of the purchaser of stamps or stamped paper in large or unusual quantities. This is properly supplemental to the first requirement and a reasonable supervision of the office and a means of discovering unlawful and fraudulent sales. (3.) It provides that for a neglect to so ascertain and so report the postmaster will be required to refund the amount of the excess salary he may have received on account of such sales. This provision is of doubtful validity, but it is not of material consequence to the questions now involved.

But if the regulation be regarded as invalid the indictment yet states an offense. It counts not only upon the regulation but upon the law, and the facts it alleges show a violation of the law.

*Judgment reversed.*