### PETERSEN v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 12, 1923.)

No. 3827.

1. **Indictment and information** ⟸⟶111(1)—**Provision "except as authorized by law," in statute regulating deposit or exchange of funds, does not create exception.**

Within Penal Code, § 225 (Comp. St. § 10395), making it embezzlement for an employee of the postal service to convert postal funds to his own use, or to deposit them in any bank, or exchange them for other funds, except as authorized by law, the phrase "except as authorized by law" does not create an exception, in the sense that the term is usually applied to statutes creating offenses, so that an indictment charging that offense need not negative the exception.

2. **Post office** ⟸⟶48(7½)—**Allegation purpose of unlawful deposit was to cover shortage held sufficient.**

In indictment for the unlawful deposit of money order funds by an assistant postmaster to the credit of the postal account, an allegation that the deposit was made for the purpose of concealing a shortage in the postal account was proper, as showing the purpose and intent with which the deposit was made; but it was unnecessary to show by what means the shortage arose, nor how it existed, nor to state the law or postal regulation which defendant was charged with violating in making the deposit in the manner he did.

3. **Post office** ⟸⟶38—**Prohibition against exchange of money order funds for other funds applies to exchange for other postal funds.**

Penal Code, § 225 (Comp. St. § 10395), making it embezzlement for a postal employee to deposit money order funds, except as authorized by law, or to exchange them for other funds, which was a revision of Rev. St. §§

4046, 4053, prohibits the exchange of money order funds for any other postal funds of a distinct class, as well as for funds of a different nature, in view of Rev. St. §§ 3846, 4045 (Comp. St. §§ 7208, 7577), and Postal Laws and Regulations, §§ 1226, 1228, 1246, 1249, 1253, regulating the care and handling of money order funds.

**4. United States ⊂⊃40—Administrative rules and regulations of heads of departments have force of law.**

Under Rev. St. § 161 (Comp. St. § 235), authorizing regulations by heads of departments, administrative rules and regulations made by heads of departments, which do not trench on legislative power, but are administrative in character, of authority lawfully conferred on heads of departments, have the force and effect of law, and violations thereof are punishable under acts which the regulations are designed to supplement.

**5. Criminal law ⊂⊃1172(6)—Unnecessary instruction as to duty of postmaster held harmless.**

In the prosecution of an assistant postmaster for unlawfully depositing money order funds to the credit of other postal accounts, an instruction as to the provisions of law respecting postmasters at depository offices, even if unnecessary, did defendant no harm, and was not error.

**6. Criminal law ⊂⊃858(3)—Jury can consider documentary evidence introduced, but not read to it.**

Where documents were offered in evidence, but not read to the jury, or read only in part, they are nevertheless accessible to the jury's inspection, and the jury might call for them, or have them sent to the jury room.

**7. Criminal law ⊂⊃400(3)—Inspector can testify as to disposition of funds disclosed by examination of records.**

A postal inspector, who had made an examination of the records and was familiar with what had been done with remittances of money order funds which defendant was charged with unlawfully depositing, was properly permitted to testify as to what disposition was made of those remittances.

**8. Post office ⊂⊃49—Evidence as to record of money order receipts in money order account held competent.**

In a prosecution of an assistant postmaster for unlawfully depositing money order remittances to the credit of other postal accounts in which there was a shortage, a postal inspector was properly permitted to testify that he found no record in the money order accounts of two specified remittances of money order funds.

**9. Criminal law ⊂⊃304(17)—Testimony of inspector as to disposition of funds not incompetent, because covering postal regulations.**

Testimony by a postal inspector as to the disposition by defendant of remittances of money order funds from outside post offices was not incompetent, because it included a statement as to what the defendant should have done with the remittances under the postal laws and regulations, of which the court would take judicial notice.

**10. Criminal law ⊂⊃419, 420(1)—Testimony of inspector as to information obtained by inspection of other post office records not hearsay.**

In a prosecution of an assistant postmaster for unlawfully depositing money order funds to the credit of other postal accounts, in which there was a shortage, testimony by postal inspectors as to the records of outside post offices, from which remittances of money order funds were made to defendant, was not hearsay.

In Error to the District Court of the United States for the Territory of Hawaii; Vaughn, Judge.

William C. Petersen was convicted of unlawfully using money order funds in a manner not authorized by law, and he brings error. Affirmed.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Smith & Wild, of Honolulu, T. H., and Edward Hohfeld, of San Francisco, Cal., for plaintiff in error.

John T. Williams, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., and S. C. Huber, U. S. Atty., of Honolulu, T. H.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. For some years prior to December 20, 1920, the defendant was assistant postmaster, under D. H. MacAdam, postmaster, at Honolulu, territory of Hawaii. The post office was conducted under the "two-division plan of management," in pursuance of which, and of the postal regulations applicable, defendant was given complete supervision of the finances of the office, which comprised, among others, certain duties, namely, the control of the vault, including the handling and sale of the bulk stamp stock, the receipt and disbursement of all moneys coming into the office, the keeping of the books and accounts of the office, supervision of the money order section, and the preparation of all the financial reports of the office to the department; he being also authorized to indorse and sign checks, to draw on the office disbursing account for the payment of the United States, and the authorized "expenses of the office."

The Honolulu post office was a depository office, to which all postmasters of the district, which included the territory of Hawaii, were required to remit their surplus funds, including postal funds, as well as money order funds. The First National Bank of Hawaii was at the same time designated a depository for funds of the United States. There were maintained in the First National Bank by the post office at Honolulu three separate and distinct accounts, to the credit of which public funds were deposited, namely, a postal funds account, a money order funds account, and an account for key deposits.

On or about December 4, 1920, the postmaster at Koloa, Hawaii, remitted to the postmaster at Honolulu money order funds in the amount of $6,200, and the postmaster at Kapaa remitted like funds in the amount of $2,646, all of which were received at the Honolulu office. These funds were, on December 6, 1920, deposited in the First National Bank by the defendant to the credit of the postal funds account. Thereafter the defendant, by two checks drawn on the First National Bank, one for $16,500, dated December 9, 1920, and the other for $10,048, dated December 13, 1920, transferred the aggregate thereof, namely, $26,548, from the postal funds account to the money order funds account.

The evidence tends to show, and the defendant admitted to the post office inspector, that the purpose of placing the money order funds in the first place to the credit of the postal funds account was to cover a shortage in that account, and that the subsequent transfer to the money order funds account was to make up the deficit incurred therein by first placing those funds to the credit of the postal funds account. Defendant, in an affidavit taken by the post office inspector, which is in evidence, describes his method of covering the shortage as follows:

"I have kept this shortage covered at previous inspections by the withholding of money order deposits received from other postmasters and applying them to the credit of the postal revenues until after the inspections; then I would transfer the amount so withheld to the money order section and certificates of deposit issued."

The defendant was indicted by the seventh count for unlawfully depositing money order funds in bank as postal funds, without authorization by law, and, having been convicted, the cause is here on writ of error. It should be stated that defendant was indicted by 16 counts, and acquitted of all except the seventh.

The principal ground upon which error is predicated is that the indictment does not state facts sufficient to constitute an offense against the laws of the United States; the sufficiency thereof having been challenged by demurrer. The indictment sets out the official status of the defendant, that he had temporary custody of certain moneys, being postal revenues of the United States, that is to say, certain moneys, being money order funds, namely, $2,646 received from the postmaster at Kapaa, territory of Hawaii, and $6,200 received from the postmaster at Koloa, which money order funds had been transmitted for deposit to the credit of the "money order funds" of the United States, and that—

"the said William C. Petersen, then and there so being such assistant postmaster * * * and so having temporary custody of the 'money order funds,' * . * * unlawfully and feloniously did willfully and intentionally use said 'money order funds' in a manner not authorized by law, that is to say, did then and there willfully, knowingly, and unlawfully deposit the said 'money order funds' * * * in the First National Bank of Hawaii to the credit of D. H. MacAdam, postmaster, Honolulu, T. H., said deposit of said moneys being then and there made by the said William C. Petersen for the purpose of concealing a shortage which then and there existed in moneys belonging to the 'surplus postal funds' of the 'postal account' of the post office of Honolulu aforesaid; the said William C. Petersen not being then and there authorized by law to use said moneys as aforesaid, that is to say, to deposit the said 'money order funds' in said bank to the credit of D. H. MacAdam, postmaster, Honolulu, T. H., for the purpose of concealing the aforesaid shortage in said 'postal account,' said moneys" being "a portion of 'money order funds.' "

The indictment is drawn in view of section 225, Penal Code (Comp. St. § 10395), which reads:

"Whoever, being a postmaster or other person employed in or connected with any branch of the postal service, shall loan, use, pledge, hypothecate, or convert to his own use or shall deposit in any bank or exchange for other funds or property, except as authorized by law, any money or property coming into his hands, or under his control in any manner whatever, in the execution or under color of his office, employment, or service, whether the same shall be the money or property of the United States or not, * * * shall be deemed guilty of embezzlement."

It is first insisted that certain matters contained in the indictment, such as the allegation "for the purpose of concealing a shortage which then and there existed in moneys belonging to the 'surplus postal funds' of the 'postal account' of the post office of Honolulu aforesaid," are but conclusions, and not admitted by the demurrer; in other words, that the indictment is not aided by such allegations, with especial stress

upon the word "shortage," that the statute embodies an exception by the use of the words "except as authorized by law," and that the indictment contains no sufficient allegations negativing the exception.

[1] The answer to these propositions depends upon the proper interpretation of the statute. The indictment is referable to the language of the statute, "or shall deposit in any bank, or exchange for other funds or property, except as authorized by law, any money or property coming into his hands," etc. The obvious purpose of this language is to inhibit a postmaster from depositing any money or property coming into his hands in any bank, or exchanging the same for other funds or property, except as the law authorizes him. The language "except as authorized by law" does not create an exception in the sense that the term is understood and usually applied to statutes declaratory of what shall constitute offenses against the law. The intent could as well have been expressed by language as follows: "Unless authorized by law," or "without being authorized by law," or "contrary to authorization by law," or the like.

[2] In the light of this interpretation, let us see what the indictment alleges. It alleges that defendant did—

"use said 'money order funds' in a manner not authorized by law; that is to say, did then and there willfully, knowingly, and unlawfully deposit the said 'money order funds' * * * in the First National Bank of Hawaii to the credit of D. H. MacAdam, postmaster, Honolulu, T. H., said deposit of said moneys being then and there made by the said William C. Petersen for the purpose of concealing a shortage which then and there existed in moneys belonging to the 'surplus postal funds' of the 'postal account' of the post office of Honolulu aforesaid, the said William C. Petersen not being then and there authorized by law to use said moneys as aforesaid, that is to say, to deposit the said 'money order funds' in said bank to the credit of D. H. MacAdam, postmaster, Honolulu, T. H., for the purpose of concealing the aforesaid shortage in said 'postal account.'"

In short, the allegations are tantamount to saying that the defendant deposited money order funds to the credit of the "postal funds" account when not authorized by law so to do. While the indictment is somewhat inartistically drawn, it cannot be said that the matter inveighed against to the purpose of concealing a shortage is a mere conclusion, for it shows the purpose and intent with which the defendant so made the deposit. It was not necessary to show by what means the shortage arose, nor how it existed, nor to state the law or the postal regulation which the defendant was supposed to have violated in making the deposit in the manner that he did. Such a pleading would be unnecessarily prolix, and it is not essential to a good indictment. We do not overlook the clause in the statute which permits the postmaster to deposit, under direction of the Postmaster General, in a national bank designated by the Secretary of the Treasury for that purpose, to his own credit as postmaster, any funds in his charge.

Counsel overlooks the theory upon which the indictment was drawn and the case tried. The obvious purpose was to charge the defendant with depositing "money order funds" to the credit of the "postal funds account," when not authorized so to do by law, which was a virtual exchange of one fund for another coming into his hands, and for an unlawful purpose—not for depositing postal funds in the First Nation-

al Bank when not authorized thereto. So considered, much of the argument of counsel is inapplicable.

[3] To show that the theory adopted. is sound, further reference to the intendment of the statute will not be amiss. Section 225 of the Criminal Code is a revision of sections 4046 and 4053, Revised Statutes. Section 4046 has to do with the embezzlement of money order funds, and provides that:

"Every postmaster, assistant, clerk, or other person employed in or connected with the business or operations of any money order office who converts to his own use, in any way whatever, or loans, or deposits in any bank, except as authorized by this title, or exchanges for other funds, any portion of the money order funds shall be deemed guilty of embezzlement."

It is obvious that the words "exchanges for other funds" were intended to include other postal funds or public moneys of the United States, as well as funds as to which the government had no interest. In the revision, the language is transposed to read, as we have seen, "or shall deposit in any bank, or exchange for other funds or property, except as authorized by law, any money or property coming into his hands." It was the purpose of the revision, no doubt, to cover, not only money order funds, but all postal funds or property of whatsoever nature, and to prohibit an exchange of one class of such postal funds for another, as the former law prohibited the exchange of money order funds for other funds, meaning, of course, other postal funds, as well as funds of any nature. So that the language "exchange for other funds or property" should be read to include any other postal funds of distinct class, as well as funds of different nature. Section 3846, R. 'S. (Comp. St. § 7208), which provides that:

"Postmasters shall keep safely, without loaning, using, depositing in an un-.authorized bank, or exchanging for other funds, all the public money collected by them, or which may come into their possession, until it is ordered by the Postmaster General to be transferred or paid out."

—seems to bear out this interpretation. Money order funds have always been, and are now, held and treated as separate and distinct from postal funds, although postmasters have been intrusted with the care and handling of both.·

Section 4045, R. S. (Comp. St. § 7577), provides specifically what moneys shall be deemed and taken to be money order funds. Section 1226 of the Postal Laws and Regulations of 1913 adopts the language of the above section of the Revised Statutes in defining money order funds, and by a footnote it is declared that money order funds are not part of the postal revenues. By section 1228, Postal Laws and Regulations, postmasters are required to keep their money· order cash apart from all other cash whatsoever, and section 1253 requires that money order accounts shall be kept separately from all other accounts. Section 1246 provides that: `

"It shall be the duty of the Assistant Treasurer of the United States to open, at the request of the Postmaster General, an account of 'money order funds' deposited by postmasters to the credit of the Postmaster General."

And section 1249 defines the duties of postmasters at depository offices, when receiving remittances of money order funds.

[4] Such rules and regulations, where they do not trench upon legislative power, but are designed and purport only to be administrative in character, of authority lawfully conferred upon the heads of the departments of the government, have the force and effect of law, and violations thereof are punishable under acts which they are designed to supplement. Section 161, R. S. (Comp. St. § 235); Rosen v. United States, 245 U. S. 467, 38 Sup. Ct. 148, 62 L. Ed. 406; United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563; United States v. Foster, 233 U. S. 515, 34 Sup. Ct. 666, 58 L. Ed. 1074; United States v. Smull, 236 U. S. 405, 35 Sup. Ct. 349, 59 L. Ed. 641. We conclude, therefore, that the indictment is not vulnerable, tested by the demurrer interposed thereto.

[5] The foregoing considerations dispose of several instructions to the jury to which exceptions were saved, and which are assigned as error, namely: Assignment 64, whereby the court instructed that "regulations prescribed by the Postmaster General, by virtue of the authority conferred upon him by law, are laws and are entitled to obedience the same as statutes and other laws." This covers assignment 15 also. Assignment 68, whereby the court instructed what the law provides respecting postmasters at depository offices. This instruction may have been unnecessary, but it clearly did the defendant no harm, and was therefore not error. Assignment 72, which has reference to an instruction given whereby an instruction given under the fourth count is made applicable to the seventh. Assignment 73, whereby the court, after reciting certain matters, instructed that, if the jury so found, they should find the defendant guilty as charged in the seventh count. Assignment 74, whereby the court instructed that a subsequent deposit of the amounts, if any, to the credit of the money order funds, did not excuse the defendant for using said money as surplus postal funds, for the purpose of concealing a shortage in the surplus postal funds, if in fact he did so; and assignments 77, 78, 79, 80, and 81.

[6] Assignment 62 relates to an instruction to the effect that the jury could rightfully consider certain documentary evidence, admitted and not read to the jury. It often happens that documents offered in evidence are not read to the jury, or are read only in part; but they are always accessible to their inspection. If referred to in argument, they are at hand; but, if not so referred to, the jury may call for them, or they may be sent to the jury room. The jury usually get a fair knowledge of the purpose for which documents are introduced when they are offered and admitted, and, if they have special bearing, it is expected that counsel will call the attention of the jury to them, and their evidentiary value will not be presumed to have been overlooked. We find no error in the instruction.

Assignments 16, 17, 18, and 19 relate to the admission of certain documents in evidence. All are without merit.

[7] Assignment 21 relates to the court's permitting R. M. French to state what disposition was made by defendant of money order remittances from Koloa and Kapaa. French was the postal inspector, and had made a thorough examination of the records, and was familiar with what had been done with such remittances. His testimony

thereto was competent and unobjectionable. Assignment 22 covers the same matter by motion to strike.

[8] Assignment 24 relates to a question propounded to French as to whether he found in the money order accounts any record of the deposit of $6,200, remittance from Koloa, and $2,646, remittance from Kapaa, as per remittance letters previously introduced in evidence, to which he answered that he found no record of such remittances. This evidence was pertinent and relevant for showing the manner in which defendant treated the remittances, as bearing upon his culpability in making the deposit of such funds, and there was no error.

[9] Assignment 32 relates to the testimony of William McHenry, who was a postal inspector sent to Honolulu to make special examination of the affairs of the post office, wherein he stated that both these remittances, referring to remittances from outside post offices, were money order remittances, and that the Pago Pago remittance was surplus money order funds, and should have been turned over to the money order section the day it was received, and deposited to the credit of the Treasurer of the United States. Objection was interposed on the ground that the court should take judicial knowledge of the postal regulations, and that the same were not matters of evidence. We see no objection to the witness' testifying as he did. The testimony included a statement of fact, with the additional statement of what should have been done with the remittance, and, although it covered a postal regulation, that did not vitiate its competency. Much less did it result in any harm to the defendant.

[10] Assignment 33 relates to the testimony of McHenry respecting the remittances from certain outside post offices, and, further, that the money order remittances from the offices stated were received by defendant and deposited to the credit of the postal account, and were necessary to balance the postal account at the time Inspector French checked the office, December 6th. This information was gathered from witness' inspection of the office, and was neither hearsay nor incompetent.

Assignments 34, 35, and 38 have been examined, and suffice it to say we find no error as to either of them.

This covers all the specifications and assignments of error relied upon by counsel, or in their brief (see page 3 thereof), for reversal, and, finding no error, the judgment of the trial court is affirmed.