## JOYCE v. UNITED STATES.
### No. 12898.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1946.

---

WOODROUGH, Circuit Judge, dissenting.

———◆———

Charles G. Bangert, of Fargo, N. D., for appellant.

P. W. Lanier, U. S. Atty., of Fargo, N. D., for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

C. E. Joyce, J. E. Pfeifer, Odin Stray, Richard R. Kitts, C. A. Waldron and John A. Zuger were indicted for conspiracy to defraud the United States in violation of § 88, 18 U.S.C.A.[1]

At the conclusion of the trial the court dismissed the charge against Waldron and Zuger, and the jury acquitted Stray and Kitts and convicted Joyce and Pfeifer, the later of whom has since died. Joyce appeals.

The indictment charges that the defendants did unlawfully "conspire, confederate

---

[1] § 88. "If two or more persons conspire * * * to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined", etc.

**366**

and agree together to defraud the United States of America,

"[1] by corruptly administering and procuring the corrupt administration of the Frazier Lemke Act of June 22, 1938, as amended March 4, 1940, 11 U.S.C.A. §§ 201 to 203, inclusive, being an amendment to the National Bankruptcy Act of 1898;

"[2] by corruptly influencing, obstructing, impeding. * * * the due administration of justice in matters pending before certain bankruptcy courts of the United States for the District of North Dakota; and

"[3] by defrauding the United States of and concerning its right to have the lawful functions of its bankruptcy courts exercised and performed free from unlawful impairment and obstruction, and * * * free from corruption, improper influence, dishonesty or fraud, in the following manner. * * *"

▆ Then follows a lengthy statement of the alleged objects, motives, purposes and acts, including 13 overt acts, of the conspirators. This part of the indictment need not be set out at length since it is no part of the charge and serves only to advise the defendants of the scope of the government's evidence and to limit the inquiry at the trial. Glasser v. United States, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680. The form of the indictment and the situation prevailing in North Dakota in 1941 and 1942 are in general the same as described in the opinion of this court in Braatelien v. United States, 8 Cir., 147 F.2d 888.

In brief outline the indictment recites that the object of the conspirators was financial gain for themselves. The plan contemplated that they would induce financially distressed farmers in North Dakota, irrespective of whether they were insolvent, to file petitions in bankruptcy under the Frazier Lemke Act, by representing to the farmers that by so doing their debts would be wiped out or reduced; that the conspirators would control the appointment of appraisers and their property would be appraised for less than its fair market value, and that it could be bought back for less than it was worth; that they would corruptly influence the conciliation commissioners to sustain such appraisals; and that they would advise and assist the farmers to prefer creditors, to omit prop-

erty from their schedules, and to transfer property to their relatives in anticipation of bankruptcy. It is charged that the plan of the conspirators was consummated, resulting in many instances in the corrupt administration of the Act, in that the bankruptcy court was, through the above described chicanery of the conspirators, used as an instrumentality to defraud the creditors of the debtor farmers.

It is further alleged that the defendants Waldron and Zuger were qualified conciliation commissioners for Ward and Burleigh Counties, North Dakota, respectively, to whose courts many of the farmer-debtor petitions were referred; that defendants Joyce and Pfeifer were solicitors who actively directed the operation of the scheme; and that defendants Stray and Kitts were appraisers appointed by Waldron and Zuger at the instance of Joyce and Pfeifer in many cases to appraise the debtor's property.

▆ Since Joyce and Pfeifer alone were convicted we need review the evidence only in reference to their activities as conspirators. In considering the sufficiency of the proof as to them it is not our province to weigh the evidence or to determine the credibility of witnesses. "We must take that view of the evidence most favorable to the government and sustain the verdict of the jury if there be substantial evidence to support it." United States v. Manton, 2 Cir., 107 F.2d 834, 839. We must remember, also, that the conspiracy may be established by circumstantial evidence and that the offense was complete when the agreement was made. United States v. Manton, supra; Braatelien v. United States, supra.

▆ The evidence would warrant a finding, and the jury presumably found, that Joyce and Pfeifer, acting in concert and cooperating, persuaded financially distressed farmers to file petitions under the Act; aided, assisted and advised them in preparing their petitions and schedules from which they omitted property that should have been scheduled; advised and induced many of them to pay local creditors before filing their petitions and to transfer property to relatives; employed attorneys for them; assisted and procured appraisals of their property for less than its fair market value; and collected and shared fees for their services ranging from

$50 to $400 from each farmer. These facts are sufficient to suport the verdict unless Joyce's contentions urged in this court are meritorious. He contends

1. That the crux of the conspiracy alleged in the indictment is an unlawful agreement between the conciliation commissioners Waldron and Zuger on the one hand and the solicitors Joyce and Pfeifer on the other; that the evidence does not support the verdict because (a) Waldron and Zuger having been acquitted the agreement was not established and (b) that since Joyce and Pfeifer were not officers of the court charged with the administration of the Act they could not be guilty of corruptly administering it or of procuring its corrupt administration; and

2. That the court erred in instructing the jury.

 The first of these contentions is predicated upon the fallacious assumption that the conciliation commissioners as officers of the bankruptcy court are necessary parties to a conspiracy to defraud the United States by corruptly administering or procuring the corrupt administration of the Act. Neither the indictment nor the statute must be so construed.

We turn first to the law. The Supreme Court has interpreted and applied the statute in Haas v. Henkel, 216 U.S. 462, 479, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; United States v. Foster, 233 U.S. 515, 526, 34 S.Ct. 666, 58 L.Ed. 1074; United States v. Barnow, 239 U.S. 74, 79, 36 S.Ct. 19, 60 L.Ed. 155; and Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968. In Haas v. Henkel, supra [216 U.S. 462, 30 S.Ct. 254], the Court said, "The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." In the opinion in the Hammerschmidt case the Court made it clear that government officials are not necessary parties to such a conspiracy. The Court there said [265 U.S. 182, 44 S.Ct. 512]: "To conspire to defraud the United States * * * means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention."

The appellant's contention in this connection is that only government officials are capable of corruptly administering an Act of Congress and that, therefore, persons other than government officials can not be guilty of conspiring to procure its corrupt administration. That such an interpretation of the law is untenable is demonstrated by the decision of the Supreme Court in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; and by United States v. Manton, supra, and Braatelien v. United States, supra.

 We next consider the indictment. The indictment sufficiently charges that the "solicitors," Joyce and Pfeifer, would "corruptly influence" the conciliation commissioners wrongfully to administer the Act, and that they would thereby procure its corrupt administration. The solicitors could thus be guilty under the charge of the indictment even though the conciliation commissioners were mere dupes and not conspirators.

 This construction of the indictment does not destroy its unity and split the conspiracy into two, resulting in a variance, unless injury to the appellant is shown. Berger v. United States, 295 U.S. 78, 81, 55 S.Ct. 629, 79 L.Ed. 1314; United States v. Manton, supra, 107 F.2d at page 849; United States v. Lekacos, 2 Cir., 151 F.2d 170, 173. No claim is made here that Joyce was in any way prejudiced by the allegation in the indictment that the conspiracy was designed to obstruct justice both by corruptly administering the Frazier Lemke Act and at the same time by "procuring" its corrupt administration.

Again, it is argued that Waldron and Zuger are essential parties to the conspiracy because they were the conciliation commissioners in whose courts the farmer debtor petitions were to be filed and who must, in order to execute the conspiracy, participate therein and adjudicate the rights of debtors and creditors. This argument is in conflict with the indictment. The conspiracy is not limited by the allegations of the indictment to cases filed in the courts of Waldron and Zuger. The field which the indictment encompassed was

state-wide and included all the financially distressed farmers and all the conciliation commissioners in the state of North Dakota. The indictment alleges that the solicitors would arouse "the interest of farmers generally in said Act of Congress"; that they would convince and attempt to convince conciliation commissioners generally and "would corruptly influence said conciliation commissioners," etc. This allegation is broad enough to apply to any or to all the conciliation commissioners in the state of North Dakota and to include both Waldron and Zuger.

The fact that the evidence relates only to farmer debtor proceedings filed in the courts of Zuger and Waldron does not establish that they were necessary parties to the conspiracy. The plan of the conspiracy contemplated that the conspirators would deceive the conciliation commissioners and induce them to approve false schedules, etc., by corrupt and false representations. Zuger and Waldron might, though innocent, be influenced by the two convicted conspirators the same as any other conciliation commissioners might have been. It was necessary to prove that the conspirators did agree to procure a corrupt administration of the Act and that an overt act was committed, but it was not necessary that the conciliation commissioners should themselves be corrupt or that they should knowingly participate in the corrupt means used by the conspirators to accomplish their purpose.

The indictment sufficiently alleges a conspiracy which might exist even though the conciliation commissioners were not members thereof; and since the evidence is sufficient to establish a concert of action on the part of the solicitors to defraud the government by procuring the corrupt administration of the Act in the way alleged in the indictment it supports the verdict.

In his brief Joyce complains of the instruction given by the court which reads:

"It was the purpose of Congress, which made it [the Frazier Lemke Act] a law of the United States, that it be honestly and impartially administered for the benefit of farmers and their creditors. It was not the purpose of Congress that other than to the extent of the lawful fees fixed for conciliation commissioners and appraisers the Act be administered for the personal benefit or profit of conciliation commissioners, solicitors, appraisers or any one other than the farmers and their creditors."

The criticism of the instruction in the brief is that under it "the jury might have felt that because the solicitors were receiving compensation for their services, they were in violation of the law"; and that although the court informed the jurors that it was not unlawful for the solicitors to assist the distressed farmers, this instruction told them that it was unlawful for them to demand, receive or accept compensation for their services.

The obvious answer to these criticisms of the instruction is that they were not embodied in any specific exception taken at the time of the trial in conformity with Rule 9 of the Rules of Practice and Procedure in Criminal Cases, 18 U.S.C.A. following section 688, Rule 8 of the Rules of the Supreme Court of the United States, 28 U.S.C.A. following section 354, and Rule 51 of Rules of Civil Procedure, 28 U.S.C.A. following section 723c. See United States v. Manton, supra, 107 F.2d at pages 846, 847, and our Rule 11. It is equally obvious that when read in connection with the instructions as a whole the instruction is not susceptible of the interpretation attributed to it by appellant. When fairly construed the instruction is not prejudicial to the appellant.

Appellant has filed 81 assignments of error; but he has not discussed them in his brief. We have read them all, however, and find no merit in any of them. None of them points to any reversible error.

Affirmed.

WOODROUGH, Circuit Judge, dissents.