**UNITED STATES of America,
Appellant,**

v.

**Bernard MERSKY, Irving Weinstein, and Merson Musical Products Corp.,
Appellees.**

**No. 96, Docket 25193.**

United States Court of Appeals
Second Circuit.

Argued Oct. 7, 1958.

Decided Nov. 6, 1958.

On Certification of Appeal Dec. 8, 1958.

Herbert C. Kantor, Asst. U. S. Atty., S. D. New York, New York City (Arthur H. Christy, U. S. Atty., and George I. Gordon, Asst. U. S. Atty., New York City, on the brief), for appellant.

Julius L. Schapira, New York City, for appellees.

Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

We must refuse to hear the government's appeal from the district court's dismissal before trial of an information charging the defendants with improperly removing the labels on goods imported from the Soviet Zone of Germany, because it seems to us that the appeal may be taken only to the Supreme Court by reason of 18 U.S.C. § 3731 (1952). Accordingly, under the terms of the statute, and following our precedent in United States v. Zisblatt, 2 Cir., 1949, 172 F.2d 740, we will certify the case to the Supreme Court if the government so requests.

Section 3731 provides that the government may appeal directly to the Supreme Court in two classes of criminal cases which are here relevant:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

\* \* \* \* \* \*

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy."

Where appeal may be taken to the Supreme Court the same statute expressly provides that it may not be taken to a court of appeals:

"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof *except where a direct appeal to the Supreme Court of the United States is provided by this section.*" (Emphasis added.)

Our conclusion from § 3731 that the government's appeal here lies only to the Supreme Court rests on two grounds. The first is that, as the district court's dismissal of the information rests on its interpretation of a regulation, it is tantamount to being "based upon the invalidity or construction of the statute upon which the \* \* \* information is

founded," and appeals from such dismissals may be taken only to the Supreme Court. The second ground is that the effect of Judge Noonan's decision was to sustain a "motion in bar" and that the express provisions of the controlling statute therefore take the appeal to the Supreme Court.

The first ten counts of the eleven count information charge violations of 19 U.S. C.A. § 1304(e), 46 Stat. 687, as amended, 52 Stat. 1077 (1938)[1] by the unlawful alteration, between August 1956 and March 1957 of the required country of origin markings on ten violins. The eleventh count charges conspiracy to violate the same subsection. The defendants moved to dismiss the information for failure to state facts sufficient to constitute an offense against the United States.

Section 1304(e) forbids wilful alterations, for the purpose of concealment, of the marking of the "country of origin" on imported articles required in subsection 1304(a).[2] Subparts (1) and (2) of that subsection vest in the Secretary of the Treasury the power to issue regulations to designate acceptable markings, and to require the addition of words "to prevent deception or mistake as to the origin of the article \* \* \*" Pursuant to this power, the Secretary issued three Treasury Decisions. The first, T.D. 51527 (August 28, 1946), provided that imported articles from any of the Allied Zones of occupied Germany could properly be marked "Germany." The second, T.D. 53210 (March 3, 1953), superseded T.D. 51527 and required that articles from the Soviet Zone be so marked, but the defendants urge that T.D. 51527 was superseded for the purpose of customs

1. Section 1304(e)—"If any person shall, with intent to conceal the information given thereby or contained therein, deface, destroy, remove, alter, cover, obscure, or obliterate any mark required under the provisions of this chapter, he shall, upon conviction, be fined not more than $5,000 or imprisoned not more than one year, or both."

2. Section 1304(a)—"\* \* \* every article of foreign origin \* \* \* imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article \* \* \* will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. \* \* \*"

valuation only, rather than for all purposes. The third, T.D. 53281 (June 18, 1953), is relied on by the government to established that T.D. 51527 had been superseded for all purposes.

The information alleged that in wilful violation of § 1304(e) the defendants, who bought from importers and sold to retailers, removed the "Germany/USSR Occupied" label from the violins; defendants' affidavit apparently admits that they customarily substituted the label "Made in Germany." Judge Noonan's dismissal of the information appears to have rested on two alternative grounds both of which the government questions on appeal: Judge Noonan held that either the regulations, properly construed, do not render illegal the defendants' alterations of the markings, or, alternatively, if the alterations were rendered criminal, the regulations are too vague to sustain a criminal prosecution.

 First, it seems to us that the dismissal of an information based upon a regulation, or regulations, is comprehended within the scope of the words "construction of the statute upon which the * * * information is founded." It is true that there has been no previous ruling on the precise question presented here: Whether appeal from a dismissal is exclusively for the Supreme Court when it is based in the alternative upon a holding that the regulation as construed is inapplicable, or upon a construction which renders it too vague to sustain the imposition of criminal sanctions. But in United States v. Foster, 1914, 233 U.S. 515, 34 S.Ct. 666, 58 L.Ed. 1074, the Supreme Court accepted jurisdiction because the district court had dismissed an indictment—based in part on a regulation of the Postmaster General—on the ground that the regulation was directly in conflict with what it held to be the proper "construction of the statute" involved. We see no reason to distinguish such dismissals from those in which the court looked to what some officer of the government has done under authority which Congress expressly delegated in order to make possible the enforcement of a statute, and not to what Congress itself has written.

Regarding such statutes and regulations there is usually no difference in the penalties which are imposed. The government's need for an authoritative ruling from the highest court may, and usually would, be equally as pressing, and it was to provide such ruling that the Act was passed.[3] See Robertson & Kirkham, Jurisdiction of the Supreme Court of the United States, § 176 (Wolfson & Kurland, ed. 1951). In short, when Congress used the term "statute" in § 3731 it did so in the broad sense and meant to include all that could have the force of law from the exercise of the power which Congress may have granted as part of the statutory scheme.

Moreover, since a dismissal based upon a holding that the regulations will not support a prosecution necessarily decides as well that the statute alone, without the regulations, will not support it, insistence upon a distinction between statute and regulation for purposes of appeal would force the government to elect whether to appeal the construction of the regulations to the court of appeals, or whether to appeal the construction of the statute to the Supreme Court. The alternative to such an election would be the simultaneous prosecution of appeals in both courts. We cannot find that the Congress intended to limit the

---

**3.** It is no answer that the court of appeals could provide the government with such a ruling where only a regulation is in question. If an appeal such as this would ever have been within the Supreme Court's exclusive jurisdiction it is now, since that Court's jurisdiction remained undiminished when jurisdiction over matters not appealable to it was first vested in the courts of appeals in 1942. Compare 34 Stat. 1246 (1907), with 56 Stat. 271 (1942); see H.Rept. 2052, April 28, 1942, 77th Cong., 2d Sess. Before 1942 to have held that there was a distinction between statute and regulation for purposes of appeal would have made dismissals based on the latter wholly unappealable, and would have defeated the remedial purpose of the statute

remedial usefulness of the statute by such an unworkable distinction in the absence of an express purpose to do so.

In any event, Judge Noonan's dismissal of the information amounts to "sustaining a motion in bar." Of course we look to the substance of the defendants' motion and what it sought to accomplish rather than its mere form. See e. g. United States v. Thompson, 1920, 251 U.S. 407, 412, 40 S.Ct. 289, 64 L.Ed. 333; United States v. Oppenheimer, 1916, 242 U.S. 85, 86, 37 S.Ct. 68, 61 L. Ed. 161; United States v. Barber, 1911, 219 U.S. 72, 78, 31 S.Ct. 209, 55 L.Ed. 99. If to sustain the motion will "end the cause and exculpate the defendants" then the motion is "in bar." United States v. Hark, 1944, 320 U.S. 531, 536, 64 S.Ct. 359, 362, 88 L.Ed. 290; see also United States v. Oppenheimer, supra, 242 U.S. at pages 87–88, 37 S.Ct. at page 69. As the defendants have not been put in jeopardy, and since, on either of the grounds given by Judge Noonan for the dismissal, the defendants will be exculpated if the district court decision stands, the appeal is from a decision which in effect sustained a motion in bar and only the Supreme Court may hear it.

For these reasons the appeal will be certified to the Supreme Court if within thirty days the government requests that we do so; otherwise the appeal will be dismissed.

On Certification of Appeal

PER CURIAM.

This cause having come on to be heard upon an appeal taken herein by the United States of America and it appearing to the court that the said appeal, pursuant to the provisions of Title 18, Section 3731, United States Code, should have been taken directly to the Supreme Court of the United States,

And the government having requested certification of the appeal to the Supreme Court of the United States subsequent to the filing of our opinion on November 6, 1958,

Now therefore, this court hereby certifies this case to the said Supreme Court.