### UNITED STATES v. ZISBLATT.
### No. 173, Docket 21119.

United States Court of Appeals
Second Circuit.
Feb. 1, 1949.

Cause Certified March 1, 1949.

Nathan April, of New York City, for the motion.

Frederick H. Block, of New York City, opposed.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

L. HAND, Chief Judge.

Zisblatt, the defendant, moves to dismiss an appeal, taken by the United States under the Criminal Appeals Act[1] from an

---

[1] § 3731, Title 18 U.S.C.A.

order which, after a verdict of conviction, dismissed an indictment for concealing the assets of a bankrupt corporation. On August 3, 1945, the defendant was indicted as president of the corporation, and on March 24, 1947, he filed a motion to dismiss the indictment because it was barred by the Statute of Limitations.[2] His position was that the three year period of limitation began to run six months after the adjudication of the corporation, which was on June 10, 1940. Judge Clancy denied the motion on March 24, 1947, upon the authority of rulings by Judge Caffey[3] and Judge Bondy[4] that, since the limitation did not begin to run until the bankrupt had been discharged, and since a corporation must apply for a discharge within six months after adjudication,[5] the period of limitation for prosecution of the crime of concealing the assets of a corporation never begins to run, if the corporation allows six months to expire without applying for a discharge.[6] Judge Coleman in Maryland had held[7] that the proviso in the discharge section should be read as though it concluded with the added words: "or until denial thereof", and that the expiration of six months after adjudication was the equivalent of a denial of a discharge.

The indictment came to trial on January 6, 1948, and at the opening the defendant moved again for a dismissal upon the ground of the Statute of Limitations; but the trial judge, who was from another circuit, ruled that he would follow Judge Clancy's decision and denied the motion. At the close of the prosecution's evidence the defendant renewed his motion on the same ground, and this time the judge reserved decision; as he also did when the defendant again repeated the same motion at the close of all the evidence. After the jury had returned a verdict of guilty, the defendant also moved on the ground of the

statute for a judgment of acquittal under Rules of Criminal Procedure, rule 29(b), 18 U.S.C.A., and in arrest of judgment under Rule 34. The judge took under advisement all these motions—as well as still other motions which need not concern us—and on June 2, 1948, he "dismissed" the indictment upon the defense of the Statute of Limitations; although it does not appear whether he meant to direct a judgment of acquittal or to arrest the judgment, he did declare that he did not decide any other question than that of the statute. The defendant argues that an order arresting judgment only goes to errors "on the face of the record," and that the putative error below was not of that kind, since it requires an examination of evidence dehors the record. He also challenges the sufficiency of the prosecution's notice of appeal; but that objection is so obviously untenable that we overrule it without discussion.

Rule 34 is explicit as to the grounds upon which a motion in arrest of judgment will lie: (1) the indictment must fail to "charge an offense," or (2) the court must be "without jurisdiction of the offense charged." The defendant did not challenge the sufficiency of the indictment, nor on this appeal does the jurisdiction of the court come up. The only question is whether the Statute of Limitations barred the prosecution and as that was based upon matter outside the indictment, the appellant is forced to call it an appeal from an order arresting a judgment. However, the appellee is right in saying that at common-law a motion in arrest of judgment raised no objections which did not appear "upon the face of the record."[8] "No defect in evidence or improper conduct on the trial can be urged at this stage of the proceedings."[9] The "face of the record" includes nothing more than the judgment roll; and indeed, the common-law knew nothing of the evidence taken at a trial until the Statute of West-

[2] § 52 (d), Title 11 U.S.C.A.

[3] United States v. Newman, D.C., 63 F. Supp. 269.

[4] United States v. Nazzaro, D.C., 65 F. Supp. 456.

[5] § 32 (a), Title 11 U.S.C.A.

[6] See also United States v. Ganaposki, D.C., 72 F.Supp. 982.

[7] United States v. Fraidin, D.C., 63 F. Supp. 271, 284.

[8] Sutton v. Bishop, 4 Burrows 2283, 2287; Jacobowsky v. People, 6 Hun 524, affirmed on opinion below, 64 N.Y. 659; State v. Bangor, 38 Me. 592; Commonwealth v. Edwards, 12 Cush., Mass., 187; Bishop's New Criminal Procedure, § 1285.

[9] 1 Chitty Criminal Law 661.

minster allowed exceptions to be sealed and a bill of exceptions to be brought up with the roll on writ of error.[10] For this reason it was held before the Rules that upon appeal any ruling whose validity depended upon the evidence taken at the trial, was not reviewable by motion in arrest;[11] and the Rules have made no change.[12] The Criminal Appeals Act spoke to the law, as it then was; it used the phrase, "motion in arrest of judgment," as it had come down from the past; and it is clear that we have no jurisdiction over the appeal.

 On the other hand, Judge Clancy's ruling on the motion before trial, based upon the Statute of Limitations, was a judgment upon a "special plea in bar," because under Rule 12 all such pleas were abolished and motions were substituted. True, it was not a judgment "sustaining" such a plea, for it overruled it; but the trial judge's ruling after verdict was in substance, though perhaps not in form, just such a judgment. Moreover, appeals from judgments sustaining such pleas are appealable to the Supreme Court, regardless of whether they involve the invalidity or construction of a statute[13]. In this they are unlike judgments quashing indictments or in arrest of judgment; and for that reason our jurisdiction is complementary to the Supreme Court's in those two sorts of appeal. But we have no jurisdiction whatever over judgments sustaining "special pleas in bar." The Criminal Appeals Act provides, however, that, when an appeal has been taken to a court of appeals, which in the "opinion" of that court should have been taken directly to the Supreme Court, the court of appeals shall certify the case to the Supreme Court. The practical application of this provision is not, however, without difficulty. It is, of course, plain that the Supreme Court must decide whether it has jurisdiction of such an appeal, and that, therefore,

if we mistakenly "certified" a case which was not within the statute it would dismiss the appeal; or that if we mistakenly refused to "certify" one, which was within the statute, it would have power in aid of its jurisdiction to compel us by mandamus to do so. It is therefore, somewhat perplexing to find what office our certificate can have; and yet it may be, indeed apparently it is, a condition upon the jurisdiction of the Supreme Court, that we should act in one way or the other. Out of this dilemma it appears to us that the most reasonable escape is that our action should depend upon whether in our "opinion" there is a reasonable ground for supposing that the Supreme Court would have jurisdiction over the appeal.

In the case at bar we have already said that the dismissal of the indictment, notwithstanding the verdict, was for all practical purposes a reversal of Judge Clancy's denial of the defendant's motion to dismiss and in substance a judgment "sustaining a special plea in bar." There could have been no doubt about this, had the trial judge granted the defendant's motion made at the outset of the trial and before any evidence had been put in. However, that motion he denied and the motions, which he did entertain and eventually granted, were all made after the trial had begun and, therefore, after the defendant had—literally at any rate—"been put in jeopardy." There is, therefore, a good argument for saying that no appeal lies to the Supreme Court. On the other hand, there is also a more than plausible argument for saying that the Criminal Appeals Act, being a remedial statute, was intended to give an appeal to the prosecution in all cases where that was constitutionally possible; and that the Supreme Court may not read literally the clause, which limits its power to cases where the defendant had "not been put in

[10] Brown v. Carver, 2 Cir., 45 F.2d 673; McCuing v. Bovay, 8 Cir., 60 F.2d 375.

[11] Carter v. Bennett, 15 How. 354, 14 L.Ed. 727; Bond v. Dustin, 112 U.S. 604, 608, 5 S.Ct. 296, 28 L.Ed. 835; Van Stone v. Stillwell & Bierce Mfg. Co., 142 U.S. 128, 135, 12 S.Ct. 181, 35 L.Ed. 961; Massenberg v. United States, 4 Cir., 19 F.2d 62; Goldstein v. United States, 9 Cir., 73 F.2d 804.

[12] Sutton v. United States, 5 Cir., 157 F.2d 661.

[13] United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161, 3 L. R.A. 516; United States v. Goldman, 277 U.S. 229, 48 S.Ct. 486, 72 L.Ed. 862; United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376; United States v. Hark, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290.

jeopardy," but that on the contrary it may think that the clause only meant that it should not intervene when the Constitution forbad intervention.

If so, the question becomes whether to reverse the dismissal and enter a judgment of conviction upon the verdict would violate the defendant's constitutional privilege. Had the trial judge directed a verdict, so that it would have been necessary upon reversal to subject the defendant to trial before a second jury, that would be "double jeopardy,"[14] but, although the Constitution gives an accused person the benefit of any mistakes in his favor of the first jury he encounters, whether it has passed upon his guilt or not, it does not extend that privilege to mistakes in his favor by judges. Indeed, were the opposite true, all appeals from decisions in arrest of judgment would be constitutionally futile because no judgment of conviction could be entered when they were reversed. So long as the verdict of guilty remains as a datum, the correction of errors of law in attaching the proper legal consequences to it do not trench upon the constitutional prohibition.[15] Whether the Supreme Court will in fact read the sentence literally, or as intended to exercise the full power of Congress in the premises, we cannot, of course, foretell, but the chance that it may choose the second construction seems to us to make it proper that we should "certify the case." Accordingly, if the prosecution files such a certification within thirty days, we will sign it; otherwise the appeal will be dismissed.

Now therefore, upon filing the opinion of the court herein, this court hereby certifies this case to the said Supreme Court.

---

[14] Nordlinger v. United States, 24 App. D.C. 406, 70 L.R.A. 227; Steck v. United States, 56 App.D.C. 368, 15 F.2d 606; Cornero v. United States, 9 Cir., 48 F. 2d 69, 74 A.L.R. 797.

[15] In re Bonner, 151 U.S. 242, 14 S. Ct. 323, 38 L.Ed. 149; Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818; King v. United States, 69 App.D.C. 10, 98 F.2d 291, 296.