**UNITED STATES of America,**

v.

**Noel Stanley EISDORFER, Defendant.**

**No. 67 CR 302.**

United States District Court
E. D. New York.

April 16, 1969.

---

Steven J. Hyman, New York City (Kunstler & Kunstler, New York City, of counsel), for defendant.

Michael Rosen, New York City (Joseph P. Hoey, U. S. Atty., of counsel), for the Government.

## SPECIAL FINDINGS OF FACT

DOOLING, District Judge.

The following are the special findings of fact herein:

1. Defendant was born April 17, 1940.

2. Defendant registered under the Selective Service System with Local Board No. 67, Far Rockaway, New York, on April 21, 1958; in his classification questionnaire, filed May 20, 1958, defendant stated that he was a full-time student at New York University and expected to receive a Bachelor of Science degree in June 1961.

3. On June 16, 1958, defendant was classified 1A.

4. On June 17, 1958, the Board mailed a 1A Classification Notice to defendant on Form 110.

5. On May 1, 1959, defendant was transferred to Group III (non-volunteers in Class 1–A who have attained the age of 19 years and have not attained the age of 26 years and who are unmarried, 32 C.F.R. § 1631.7(a) (3)).

6. In June 1961 defendant graduated from New York University with a degree.

7. Defendant never sought or was granted a student deferment.

8. On March 12, 1962, a DD Form 44 was submitted to the Board stating that defendant had enlisted in the USAF Ready Reserve on March 7, 1962, and was serving satisfactorily.

9. Defendant had not enlisted in USAF Ready Reserve or any Ready Reserve unit; the DD Form 44 was false; defendant did not sign the DD Form 44, nor does it purport to be signed by him;

there is no direct evidence of the identity of the person who procured the filing of DD Form 44.

10. On March 18, 1962, defendant married; defendant did not advise the Board of his marriage until February 1967.

11. On April 16, 1962, the Board classified defendant 1D (enlisted member of reserve component, ROTC etc., 32 C.F.R. § 1622.13(1), 1962 ed.)

12. On April 17, 1962, the Board mailed to defendant a Notice of Classification 1–D.

13. Registrants who enlist in the Ready Reserve before they are ordered to report for induction are deferred from training and service under 50 U.S.C. App. § 456(c) (2) (A).

14. Defendant was deferred from training and service as long at the 1–D classification continued at least until approximately March 7, 1966.

15. There is no evidence that defendant ever communicated (before 1967) with the Board about the 1–D classification.

16. Defendant's registration number is 50–67–40–119, that is, 50 for New York City; 67 for Local Board No. 67; 40 for his year of birth; and 119 for defendant's sequence number among his Board's registrants born in 1940.

17. Local Board No. 67 delivered Class 1–A Group III non-volunteer registrants born in 1940 for induction in response to calls commencing with Call No. 159, delivery date, September 26, 1963; non-volunteer registrants born in 1941 were called in regular order commencing not later than Call No. 161 of November 27, 1963.

18. If defendant's classification of record had remained 1–A, Group III he would have been included under a Call Number not later than No. 161 of November 27, 1963.

19. On March 18, 1962, the date of defendant's marriage, a registrant who was married was, except in a case of hardship to his wife within the meaning

of 32 C.F.R. § 1622.30(b) (1) (as then last amended on June 18, 1957, 22 F.R. 4289), continued in Class 1–A and in Group III, 32 C.F.R. § 1631.7(a) (3), as then last amended on October 22, 1957, 22 F.R. 8,288. See finding 39C, infra.

20. 32 C.F.R. § 1631.7(a) (3) was amended on September 10, 1963, to transfer married men from Group III to Group IV (28 F.R. 9,865).

21. Local Board No. 67 has not called any registrants from Group IV, or from Group V (which latter group is made up of non-volunteers who are over 26; registrants are called from Group V youngest first).

22. 32 C.F.R. § 1622.30(a), until amended on March 14, 1963, had in ultimate effect provided that (except in hardship cases under Section 1622.30 (b)) a registrant was not eligible to Class 3–A by reason of the birth of a child born after August 25, 1953; on March 14, 1963, Section 1622.30(a) was amended (28 F.R. 2,615) to provide broadly that a registrant who had a child with whom he maintained a bona fide family relationship in their home "shall be placed" in Class 3–A. At the same time Section 1622.30(c) (1) continued the definition of "child" as including a "child from the date of its conception," but it also continued the provision of Section 1622.30(c) (3) that "No registrant shall be placed in Class 3–A under paragraph (a) of this section because he has a child which is not yet born unless prior to the time the local board mails to him an order to report for induction which is not subsequently cancelled there is filed with the local board the certificate of a licensed physician stating that the child has been conceived, the probable date of its delivery, and the evidence upon which his positive diagnosis of pregnancy is based."

23. On March 30, 1964, defendant and his wife became the parents of a child; defendant did not advise the Board of the birth of his child until February 1967, and he did not at any time before the child's birth furnish to the Board medical evidence of the child's conception as outlined in 32 C.F.R. § 1622.30(c) (3). The earliest call on which 1940 registrants in Local Board No. 67 were listed in regular order of call was Call No. 159 of September 26, 1963, prepared on September 10, 1963; on the latter date defendant, if he had advised the Board of his marriage, would have been entitled to be placed in Group IV and to have been excluded from the call, and, if he had advised the Board of his wife's pregnancy, would have been eligible to be placed in Class 3–A and to be excluded from the call.

24. On August 26, 1965, 32 C.F.R. § 1631.7(a) (3), (4) was amended to limit Group IV to registrants married before the effective date of the amendment and to redefine Group III to include both unmarried registrants and registrants married after the effective date of the amendment (30 F.R. 11,129).

25. On March 7, 1966, defendant's local board file was forwarded to the New York City Selective Service System Headquarters at the latter's request.

26. By letter of December 22, 1966, the Federal Bureau of Investigation of the Department of Justice advised the Board that the United States Attorney had reviewed defendant's case as one in which a 1D deferment had been received as a result of submitting a fraudulent DD Form 44, and that the United States Attorney had indicated that the file of such a registrant, who through his own connivance or that of others had been "afforded a sanctuary from the draft," should be promptly reviewed to make the registrant ready for early induction, if possible, but that such a registrant should not be inducted without notice to the United States Attorney so that he could then decide whether to prosecute or let the induction go forward.

27. By letter of January 26, 1967, the Chief, Legal Division, of the New York City Headquarters of Selective Service System returned the defendant's file to the Board, and advised the Chairman of Local Board No. 67 that the F.B.I. had

advised and he understood that the local board had also been advised that defendant was not, nor had he been when the DD Form 44 was filed, a member of the Reserves or of the National Guard and that the Form was fraudulent; the Chief of Legal Division suggested that the Board consider declaring defendant delinquent "for failure to keep the local board advised as to his proper status and being instrumental in furnishing false and misleading information to his local board."

28. On February 1, 1967, the Board noted in the Minutes of Actions on defendant's file "declared delinquent for failure to keep LB advised as to proper status and being instrumental in furnishing false and misleading information to LB."

29. On February 2, 1967, the Board mailed a Notice of Delinquency to defendant, notifying him that he had been declared delinquent because of failure to perform "the following duty or duties required of you under the selective service law: Failure to keep the Local Board advised as to your proper status and being instrumental in furnishing false and misleading information to the Local Board." See 32 C.F.R. §§ 1602.4, 1641.2 (a), 1642.1, 1642.2, 1642.4.

30. Defendant answered, by letter dated February 4 and received February 6, 1967, stating that he was married and lived at a new address and he gave his employer's name and address; he said that the reason he had not changed his old address was because the address was his family's "and I receive mail there." Cf. 32 C.F.R. § 1641.3.

31. The delinquency notice (finding 29) "directed" defendant "to report to this Local Board immediately in person or by mail, or to take this notice to the Local Board nearest you for advice as to what you should do"; the notice stated that the addressee's "willful failure to perform the foregoing duty or duties [see finding 29] is a violation of the * * * Act * * * which is punishable by imprisonment * * * or a fine

* * * or * * * both * * * You may be classified in class 1–A as a delinquent and ordered to report for induction." Defendant's letter (finding 30) was not responsive; it characterized the Notice of Delinquency as "a notice where you inquire as to my status"; apart from advising of his marriage, child, address, employment and reason for not reporting his change of address (32 C.F.R. §§ 1641.3, 1641.7), it said only, "I do not know what other information you might require * * *. I am sending you this notice by certified mail so there will be no question about the fact that you have whatever information you might require * * *."

32. The Board recorded receipt of the letter in its Minutes of Action under date of February 6, 1967, as "Rec'd ltr adv. reg. married, has child and has new address".

33. Defendant did not report in person to the Local Board or seek its advice as to what he should do; defendant did not either deny or offer to explain the two failures to perform duty referred to in the Delinquency Notice. See 32 C.F.R. §§ 1625.1(b) (report within 10 days any fact that might result in classification change; note § 1625.2 on reopening classification); § 1641.3 (keep Board advised at all times "of address where mail will reach him"); § 1641.5 (registrant under duty to keep himself informed of his status; any entry about registrant on Classification Record, SSS Form No. 102 [see § 1621.6(a)], due legal notice thereof to him); § 1641.7(a) (every registrant under duty to keep Board currently informed on occupational, marital, family, dependency and military status, physical condition and home address, and to report within 10 days in writing every change in such status and in his physical condition and home address); § 1641.2 (b) (registrant's failure to claim and exercise any right or privilege within the required time deemed waiver of right or privilege).

34. Defendant was classified 1–A on February 23, 1967 (see C.F.R. §§ 1642.10, 1642.12), and the Board mailed him a

Notice of Classification on February 24, 1967, on Form 110, which advised defendant of his rights of personal appearance and appeal (Exhibit 3). See 32 C.F.R. §§ 1642.14, and 1624.1 et seq.

35. Defendant did not file a written request for a personal appearance before the Board or make an appeal in writing to the Board in lieu of requesting a personal appearance. See 32 C.F.R. § 1641.-2(b).

36. On April 4, 1967, the Board received from New York City Headquarters of the Selective Service System a copy of a letter of the F.B.I. to the New York City Director of the Selective Service System dated March 28, 1967, in which the F.B.I. advised that "investigation has disclosed that [the DD Form 44] is fraudulent, inasmuch as it reports that Eisdorfer is a member of the 514th Troop Carrier Wing, McGuire Air Force Base, New Jersey, and in fact he never has been a member of that unit." The letter advised that the United States Attorney "declined prosecution of Eisdorfer in favor of administrative action by Selective Service."

37. On April 13, 1967, the Board mailed to defendant an order to report for induction on April 28, 1967; the Board advised the Chief, Legal Division, New York City Headquarters, Selective Service System, that it had done so in the following language:

"This is to advise you that the above named delinquent registrant has been ordered to report for Induction on April 25, 1967.

(Fraudulent DD Form 44)"

See 32 C.F.R. §§ 1631.7(a), 1642.13.

38. On April 14, 1967, defendant asked the Board the reason for his being sent for induction since he was over 27 years old, and he was told that "since he is Delinquent with the Local Board he must report for Induction as Ordered. Also informed that ten day right of appeal has expired."

39. On April 17, 1967, defendant presented to the Board a telegram of the Rabbi who officiated at his marriage (giving the dates of defendant's marriage and his child's birth), a letter requesting reconsideration of the 1–A classification, and an appeal from his classification, and spoke to the Chief Clerk of the Board:

A. The letter asserted (i) that in about 1960, while a student, he had been classified 1–D; (ii) that he had since married and had a child, giving the dates, with whom he lived and whom he solely supported; (iii) that he had "always" understood and had been advised that married men with children of his age were entitled to 3–A classification; (iv) that he did not appeal his February 1967 1–A classification, and that it was only when he received the order for induction that he "realized that [he] had either been misinformed or that the Board had made a clerical error; and (v) that his induction would leave his wife and child in precarious financial circumstances. Reconsideration of the classification was requested, and it was stated that the accompanying appeal from 1–A classification was alternative to reconsideration by the Board.

B. The Appeal from 1–A classification repeated matter from the letter adding (i) that his wife and child would have to seek shelter with her family or defendant's or live in "most reduced circumstances"; and (ii) that he did not appeal his February 1967 1–A classification because he had been advised that married men his age with children were normally being classified 3–A.

C. Defendant stated to the Chief Clerk of the Board (in addition to repeating matter set forth in the letter) that (i) when he received the 1–D classification he went to Mr. Jacobowitz, a lawyer in Far Rockaway who was defendant's father's lawyer, and Jacobowitz told him to keep the 1–D card and forget it; (ii) when he received his 1–A classification he went to Jacobowitz and Jacobowitz said, Don't worry, they can't touch you because you are over 26 years of age, and that was why he did not appeal; and (iii) he did not contact the Board because he knew he was wrong all the way on his

classification. The Chief Clerk advised defendant that he did not have a right of appeal but that the Board would review his letter, the letter of appeal, and the Rabbi's telegram, and he would be advised of their determination.

40. On the same day, April 17, 1967, the Board declined to change defendant's status. See 32 C.F.R. § 1642.4(c) (delinquent registrant may be removed from that status at any time); § 1642.14(b) (delinquent's 1–A classification may be reopened at Board's discretion any time before induction, without regard to § 1625.2 restrictions, i. e., must ordinarily present facts not considered when registrant classified which, if true, would justify classification change, but may not reopen after mailing order to report for induction unless Board first finds change in status as result of circumstances beyond registrant's control).

41. Defendant was notified by letter mailed April 18, 1967, that the Board had reviewed the evidence submitted by defendant, had determined that it did not warrant a change in status, and that defendant was to report for induction as ordered.

42. On defendant's application his induction was on April 21, 1967, postponed until further notice.

43. A letter from the F.B.I. received April 24, 1967, advised the Board that when defendant was interviewed by the F.B.I. on November 21, 1966, (a) he stated that he had reported his marriage to the Board and attributed the 1–D classification received a month later in April 1962 to his marriage, and (b) the F.B.I. advised him that a 1–D classification signified membership in a reserve unit and that his classification was erroneous since he was not a reservist.

44. Defendant was directed to appear before the Board on May 22, 1967, for interview; in response to requests, defendant was permitted to have counsel and was advised that the interview was to provide defendant with an opportunity to meet with the members of the Board, at which time his delinquency status would be discussed. See 32 C.F.R. § 1642.4(c).

45. Defendant appeared with counsel before four of the five members of the Board on May 22, 1967; defendant agreed that he had never been in the reserves, he disclaimed the DD Form 44 filed in his name and disclaimed any connection with, or taking any action to obtain the 1–D classification; the contention was that defendant was over 27, had been married March 18, 1962, and had a child born March 30, 1964; that there was no factual basis for classifying defendant as a delinquent, and that he should not be inducted; defendant offered no explanation of how or by whom the DD Form 44 was submitted, although his counsel suggested a hypothetical situation in which a registrant could be innocent of direct complicity in the initial filing of such a false form; it was not said that the hypothetical case applied to the defendant; the Board reserved decision.

46. On June 8, 1967, the full Board unanimously decided that the delinquency of defendant should be retained saying:

"Registrant's only explanation for the I–D was that he thought it was due to his marriage, which he never advised the Local Board of, (nor the birth of his child). Moreover his letter of April 17, 1967, indicates he always understood that he was entitled to a III–A, thus admitting that he failed to advise the Local Board of a change in status that would effect his classification. In addition, the Local Board is of the opinion that registrant was aware of his ineligibility for I–D and cooperated with obtaining the I–D, or purposefully worked for its retention by his silence."

47. By letter mailed June 15, 1967, defendant was advised that the Board had determined that his delinquency be retained.

48. By "Postponement of Induction" mailed June 15, 1967 (enclosed with the letter of the same date) defendant was

982

directed to report for induction on June 29, 1967.

49. Defendant, by letter of June 19, 1967, sought to appeal the determination to retain the delinquency and classification as unsupported by evidence, amounting to the imposition of a penalty without due process safeguards, as unauthorized by law or the SSS regulations and therefore unconstitutionally retained, and on the ground that defendant was entitled to 3–A classification as the sole support of his wife and daughter.

50. On June 20, 1967, the purported appeal letter of June 19, 1967, was sent to the Chief, Legal Division, New York City Headquarters, Selective Service System.

51. By letter dated June 23, 1967, the New York City Director, Selective Service System, advised defendant that although no timely appeal had been taken, the facts of the case had been reviewed and that it appeared that "the decision of the local board to declare you delinquent, classify you I–A and thereafter, retain your delinquency status after further consideration, was a proper exercise of its discretion and substantiated by bases in fact contained in your cover sheet."

52. Defendant reported to the induction station on June 29, 1967, was given a medical examination and was found qualified for induction.

53. Defendant was given the opportunity to submit to induction at the induction station on June 29, 1967; he was informed that refusal to submit to induction was a felony; he was requested to take the step forward that constitutes formal submission to induction and he did not do so.

54. Defendant was on June 29, 1967, a person registered pursuant to the Universal Military Training and Service Act, as amended, the proclamations of the President of the United States, and the Regulations issued and promulgated pursuant to said Act.

55. Defendant knowingly refused and failed to submit to induction into the armed forces of the United States after notice had been given to him by Local Board No. 67 requiring him to report for induction on June 29, 1967.

56. Defendant was ordered to report for induction as a delinquent registrant classified in Class 1–A by reason of delinquency and regardless of other circumstances pursuant to 32 C.F.R. § 1642.12; he was included in Call No. 202 for induction on April 25, 1967, and, after postponement, in Call No. 204 for induction on June 29, 1967, as a delinquent registrant delivered for immediate induction pursuant to 32 C.F.R. §§ 1642.13 and 1631.7(a) (1).

57. The Board did not remove the declaration of delinquency pursuant to 32 C.F.R. § 1642.4(c), nor reopen the classification of defendant pursuant to 32 C.F.R. § 1642.14(b) or § 1625.2 or both.

58. The specific findings of fact of the Board on which it retained the declaration of delinquency on the basis of which it classified defendant 1–A as a delinquent in Group I of Section 1631.7 (a) (1) were supported by sufficient evidence.

A. There was abundant evidence in the file from and after the Board's receipt of defendant's letter received February 6, 1967, that defendant had failed to keep the Board currently informed of his occupational, marital, family, dependency and military status [32 C.F.R. § 1641.7(a)] and the data about which he failed to keep the Board currently advised were relevant and material to classification and change in classification [32 C.F.R. § 1625.1(b)].

B. Before issuance of the declaration of delinquency, the Board had before it only trustworthy indications that investigation by the Bureau of Investigation of the Department of Justice had led to the conclusion that the DD Form 44 in defendant's file was untrue; accepting that, and in light of defendant's duties to keep himself informed of his obligations and status and his means for doing so (32 C.F.R. §§ 1606.32, 1621.8,

1641.1, 1641.5), the Board could reasonably infer a significant failure on defendant's part to keep the Board advised of his military status.

C. There was sufficient and increasing evidence in the file from and after the Board's receipt of defendant's letter on February 6, 1967, that defendant was instrumental in furnishing false and misleading evidence to the Board, commencing with his initial failure to deny it, his failure at any time to advance an explanation for the presence of the DD Form 44 in his file, his inconsistent statements about his own actions and understanding in relation to his receipt of the 1–D classification, the inference from his failure to seek a delinquency interview before he was reclassified in 1967, his failure to appeal his 1–A classification in 1967, and the inference to be drawn from defendant's failure to communicate any facts to the Board or seek any information from it during the entire period of just under five years from the filing of DD Form 44 until the sending to him of the delinquency notice.

D. Before issuance of the declaration of delinquency the Board had before it only trustworthy indications that investigation by the Bureau of Investigation of the Department of Justice had led to the conclusion that the DD Form 44 in defendant's file was untrue; accepting that, the Board could reasonably take the position that defendant was implicated in filing it until he explained its presence in his file, in view of defendant's duties to keep himself informed of his status and his means of doing so.

59. The Board did not consider whether or not defendant should have been included in a 1967 call, independently of his delinquency, as a 1940 registrant omitted from his proper call in or after September 1963 as a registrant (a) then properly classified 1–A because he was not eligible for classification in Class 1–D, and—since he had not advised the Board of his marriage or of the conception of his daughter—(b) not then established as eligible for classification in Class 3–A under the March 14, 1963,

amendment of 32 C.F.R. § 1622.30(a), (c) (3) by reason of the conception of his daughter, and (c) not then transferable to Group IV under the September 10, 1963, amendment to 32 C.F.R. § 1631.7 (4) by reason of his marriage [see 32 C.F.R. § 1641.2(b), (failure timely to claim and exercise any right or privilege waives it)].

## CONCLUSIONS OF LAW

The facts, as found, come down ultimately to these: A false DD Form 44 certifying that defendant, then a college graduate in Class 1–A, Group III, had enlisted as an active member of a reserve unit, filed in defendant's Selective Service file on March 12, 1962, resulted in his being classified 1–D from April 17, 1962, until February 23, 1967. See 32 C.F.R. § 1622.13. Meanwhile, on March 18, 1962, defendant had married. His marriage did not then make him eligible for 3–A classification (see 1962 ed. 32 C.F.R. § 1622.30). It did not entitle him to transfer from Group III to Group IV in the all-important order of call until September 10, 1963 (see 1962 ed. 32 C.F.R. § 1631.7(a) and Executive order 11,119, 28 F.R. 9865). On March 30, 1964, defendant had a daughter. That fact did not render him eligible for 3–A classification until March 14, 1963 (see 1962 ed. 32 C.F.R. § 1622.30 and Executive Order 11,098, 28 F.R. 2615), but defendant could thereafter have established eligibility for Class 3–A by timely filing adequate medical evidence that the child had been conceived. Defendant—classified 1–D by reason of the false DD Form 44 in his file—did not report his marriage, the conception of his child, or her birth to his local board until 1967. If defendant had been classified as a Class 1–A registrant throughout 1963, he would have been included in draft calls issued at some time during the period September 10, 1963, through November 1963. He was not called because he was classified of record as 1–D, a class for which he was not eligible, and neither his marriage nor the conception of his child appeared in his draft record. Had defendant made timely report of his

984

marriage and of the conception of his daughter (assuming the DD Form 44 was not in his file) he would not have been called, for either transfer to Group IV in the order of call, or a 3–A classification would have excluded him from the 1963 and all later calls. Defendant's failure to report in 1962 that he was not a reservist and therefore not entitled to 1–D classification, and his failure to report his marriage to his local board in 1962 and 1963 were both failures to report facts bearing decisively on his classification, and they were material failures to perform substantial duties required of him under the selective service law; he was, in the language of the Selective Service System regulations, a delinquent, and his delinquency was major and aggravated. See 32 C.F.R. §§ 1602.4, 1625.1, 1641.7, 1642.2 (continuing duty to perform required acts).

Defendant's local board declared him a delinquent, classified him 1–A as a delinquent and ordered his induction in Group I as a delinquent [see 32 C.F.R. §§ 1642.4, 1642.12, 1642.13, 1631.7(a) (1)]. Defendant responded to the order to appear at the induction station, was found medically qualified for induction, and he was given the opportunity to submit to induction and refused to submit to induction. The trial of his indictment, therefore, presents one debatable question only, was the order to report for induction valid. That in turn depends on the validity of his Class 1–A, Group I, classification, and the validity of that classification depends on the validity of the delinquency regulations.

That the defendant has been disadvantaged by the delinquency regulations appears from the special findings of fact and from what is set forth just above. That does not mean that the local board might not have ordered defendant's induction on the wholly different basis that he was not entitled to the 1–D classification, had waived his entitlement to Group IV or 3–A classification [see 32 C.F.R. § 1641.2(b)], and should be inducted as a 1940 registrant omitted from his regular 1963 call and still liable to

induction without reference to his age because his induction and service had been deferred through the agency of the improper 1–D classification; nor does it mean that other courses may not have been open to the local board; any alternative to the course followed by the local board would present its own grave problems, and they cannot be anticipated or passed on now. But the record makes it plain that whatever the Board might have done, it did order the defendant's induction under the delinquency regulations and as a delinquent, and the order of induction cannot on the present record be rested on any other, alternative basis. There is nothing in the record to indicate what the Board might have done, or would have been required to do, if it had not invoked the delinquency procedures.

■ The view was indicated in part "3" of the Memorandum of June 24, 1968, (Appendix A, *infra*), that the validity of the delinquency regulations is open to the gravest question in the absence of a showing that over the long period of their existence they have through a settled course of administration overcome the defects pointed out in the Memorandum. It has not been possible to make any such showing. There is no reason to suspect that the delinquency regulations are invoked unwisely or indiscreetly; there is every indication, however, that the local boards are compelled to act on their own uncircumscribed responsibility without the guidance of settled standards in a regime of conscientious anomie. There is no alternative to concluding that the defendant's 1–A, Group I, classification and order to report for induction, which unmistakably and directly rest upon the operation of the delinquency regulations, must be held invalid. *Cf.* Oestereich v. Selective Service System Local Bd., 1968, 393 U.S. 233, 236–237, 243, fn. 6, 89 S.Ct. 414, 21 L.Ed.2d 402 (concurring opinion); Clark v. Gabriel, 1968, 393 U.S. 256, 258, 89 S.Ct. 424, 21 L.Ed.2d 418; Breen v. Selective Service Local Board No. 16, 2d Cir.1969, 406 F.2d 636, 639.

Defendant argues that, additionally, the order to report for induction was invalid because it was, in effect, the final judgment, depriving him of his liberty, rendered in an essentially punitive proceeding without the due process safeguards required in such proceedings. *Cf.* Kennedy v. Mendoza-Martinez, 1963, 372 U.S. 144, 167–169, 183–184, 186, 83 S.Ct. 554, 9 L.Ed.2d 644; Oestereich v. Selective Service System Local Bd., *supra*, 393 U.S. at 243, fn. 6, 89 S.Ct. 414, 21 L.Ed.2d 402 (concurring opinion). But the record does not make the point available. Defendant's reactions to the Board's actions were so *irregular*, disingenuous and unresponsive, and so very far from posing any definable issue of fact or any ground for an exercise of discretion by the Board, that it is not possible to say how the structure of procedure would have operated in a delinquency case in which removal of the declaration of delinquency was sought before reclassification on grounds that afforded discretion an opportunity to function, and in which the registrant sought a review of a delinquency-based classification by the available personal appearance, appeal and reopening procedures. Induction is certainly not in itself punitive. It is, in a free society, an obligation and privilege, 50 U.S.C.App. § 451(c); the deeply disturbing question whether the delinquency regulations have pressed a punitive deformation on the administration of the Act is not plainly raised on the defendant's facts. The local board has not considered those facts in the perspective of determining whether or not the defendant is available for immediate induction independently of the delinquency regulations.

The Government argues that the failure to appeal the 1967 1–A classification waived the defendant's right to contest the validity of the order to report for induction as a Class 1–A, Group I registrant. It is doubtful that the point is available: a personal appearance was granted to defendant on May 22, 1967, although the defendant did not, and perhaps he could not, use it to advantage, and, while the Selective Service System at no time formally reopened or explicitly reviewed the defendant's case as upon a seasonable appeal, "state" headquarters seems to have acted under 32 C.F.R. § 1626.1 with a view to the merits in the survey of the file made at headquarters in the period June 20–28, 1967, and it declined to intervene. In any case, the gist of defendant's position, and certainly its only claim to substantiality, lay in the contention that the Board utterly lacked the power to classify defendant 1–A in the teeth of the statute and regulations in view of the undisputed facts of the defendant's 1962 marriage, 1964 parenthood and status as overaged for Groups I and III. The declaration of delinquency and its retention under the terms of the regulations rested beyond peradventure, on sufficient evidence, and failure to seek administrative relief against it would normally have had the usual consequence of any failure to exhaust administrative remedies in an area within which administrative determinations may lawfully operate. But that is presently irrelevant since the delinquency regulations and the action taken under them are not a valid predicate for the defendant's Class 1–A, Group I, reclassification and order to report for induction. The claim is not that the Board erred in the exercise of its powers, or, even, that it acted without having the quantum of evidence that must be before a local board to legitimate its determinations of issues of classification and order of call. The claim—legally equivalent to a claim that there is not and *could* not be a basis in fact for the reclassification and order to report for induction—is that the statute and constitution on the undisputed facts denied to the Board the power it attempted to exert in ordering the defendant to report for induction. *Cf.* Oestereich v. Selective Service System Local Bd., *supra*, 393 U.S. at 235, fn. 5, 89 S.Ct. 414, 21 L. Ed.2d 402; Dickinson v. United States, 1953, 346 U.S. 389, 394–395, 74 S.Ct. 152, 98 L.Ed. 132; Estep v. United States, 1946, 327 U.S. 114, 120–123, 66 S.Ct. 423,

90 L.Ed. 567; Breen v. Selective Service Local Board No. 16, 2d Cir. 1969, 406 F. 2d 636, 639; Miller v. United States, 9th Cir. 1967, 388 F.2d 973, 976–977; Wills v. United States, 9th Cir. 1967, 384 F.2d 943; United States v. Carson, E.D.Ark. 1968, 282 F.Supp. 261, 271–272; United States v. Burlich, S.D.N.Y.1966, 257 F. Supp. 906, 911–912. Contrast United States v. McKart, 6th Cir. 1968, 395 F. 2d 906, *cert.* granted, 1968, 393 U.S. 922, 89 S.Ct. 256, 21 L.Ed.2d 258, argued, 1969, 37 L.W. 3320; Du Vernay v. United States, 5th Cir. 1968, 394 F.2d 979, *cert.* granted, 1968, 393 U.S. 976, 89 S.Ct. 1186, 22 L.Ed.2d 306, argued, 1969, 37 L.W. 3320.

The statute long provided, Section 6 (h) of the Act, 50 U.S.C.App. § 456(h), that

"The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces [or from training in the National Security Training Corps] (1) of any or all categories of persons in a status with respect to persons (other than wives alone, except in cases of extreme hardship) dependent upon them for support which renders their deferment advisable, and (2) of any or all categories of those persons found to be physically, mentally, or morally deficient or defective. * * * [T]he President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces [or training in the National Security Training Corps] of any or all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes. No deferment from such training and service in the Armed Forces [or training in the National Security Training Corps] shall be made in the case of any individual except upon the basis of the status of such individual."

Section 4(a), 50 U.S.C.App. § 454(a) establishes the liability for training and service of all male citizens in the Armed Forces and provides that each registrant shall be immediately liable for "classification and examination" and "shall, as soon as practicable following his registration, be so classified and examined, both physically and mentally, in order to determine his availability for induction for training and service in the Armed Forces * * *. The President is authorized, from time to time * * * to select and induct into the Armed Forces * * * for training and service in the manner provided in this title [of the Act] (including but not limited to selection and induction by age group or age groups) such number of persons as may be required to * * * maintain the strength of the Armed Forces." Section 5(a) [now § 5(a) (1)] of the Act, 50 U.S.C.App. § 455(a) [now § 455(a) (1)], requires the selection of persons for training and service under Section 4 to be made impartially "under such rules and regulations as the President may prescribe" from those liable for training and service "and who at the time of selection are registered and classified, but not deferred or exempted." The third proviso in Section 5(a) confirms the President's power, under such rules and regulations as he prescribes, to provide "for the selection or induction of persons by age group or groups." Section 5(b) of the Act provides for determining the quotas of men to be inducted for training and service "on the basis of the actual number of men * * * who are liable for such training and service but who are not deferred after classification."

■ The family and dependency classification and order of call regulations have always been explicit and equal in operation. The statute does not require that there be any such regulations—since they are but "authorized"—but once established, and so long as in effect, they have the force of law, and in full peace-time particularly, an immense

impact on the ordering of private lives *. The classification and call regulations, not the unimplemented words of the statute, determine liability and availability for training and service. "Classification is the key to selection" [32 C.F.R. § 1622.1(b)]. Hence, whatever uncertainties may exist about the survival of a significant jurisdiction to review local board action on the administration of explicit statutory exemptions, the curtailment of that jurisdiction does not imply any narrowing of the right of defendants in criminal cases—in effect—to challenge the validity of their classifications and orders to report for induction on the ground either that there is no basis for them in the regulations, or no basis for them in fact, or both. *Cf.* Breen v. Selective Service Local Board No. 16, *supra*. And it is equally clear that, whether or not a set of regulations must be adopted, they must be adhered to once adopted, and those subject to their operation can challenge as invalid any arbitrary and unauthorized departures from them. Smith v. Resor, 2d Cir. 1969, 406 F.2d 141, 145.

## ULTIMATE CONCLUSIONS OF LAW

The ultimate conclusions of law on the preliminary question required to be determined by the Court as such and not as trier of the issues of fact (Cox v. United States, 1947, 332 U.S. 442, 452–453, 454–455, 68 S.Ct. 115, 92 L.Ed. 59) are the following:

I. Defendant was disadvantaged by the application to him of the delinquency regulations and has standing to challenge their validity.

■ II. The existing delinquency regulations, when made the sole basis, as in the present case, for including a registrant in a Class and Call-up group other than those in which he would be included under valid classification regulations in the absence of such delinquency regulations, are not authorized by law, and their application to defendant as a basis for classifying him 1–A, Group I and ordering his immediate induction denied him his liberty without due process of law.

III. By reason of the invalidity of the delinquency regulation as applied to defendant there was not any basis in fact in the record upon which Local Board No. 67 acted for the defendant's classification as 1–A, Group I, and for the order for induction.

■ IV. The indictment does not charge an offense for the reason that the Regulations alleged in it were not authorized by Section 10(b) (1), (c) of the Act, 50 U.S.C.App. § 460(b) (1), (c), and are in conflict with Sections 4(a), 5 (a), (b) and 6(h), 50 U.S.C.App. §§ 454 (a), 455(a), (b) and 456(h), and for the reason that the notice requiring defendant to report for induction alleged in the indictment was an invalid denial to defendant of due process of law.

---

* The Congress in amending Section 5(a) of the Act in the Military Selective Service Act of 1967 (81 Stat. 100) added a new paragraph (2), signalling the importance attached to order of call, reading

"(2) *Notwithstanding the provisions of paragraph (1) of this subsection, the President in establishing the order of induction for registrants within the various age groups found qualified for induction shall not effect any change in the method of determining the relative order of induction for such registrants within such age groups as has been heretofore established and in effect on the date of enactment of this paragraph, unless authorized by law enacted after*

the date of enactment of the Military Selective Service Act of 1967."

The Congressional explanation, in the part of the same Act amending Section 6(h) (1), that "prime age" group means the group from which selections are "first to be made after delinquents and volunteers," does not support an argument for the validity of the delinquency regulations. If those regulations had definite terms and an expressed and definite set of ordered consequences and circumstances of remission—as the classification and order of call regulations do—the Congress might be thought to have approved the regulations. It could not, however, approve a continuance of executive action wholly without criteria.

The ultimate conclusion of law relevant to the issues of fact on the assumption that the indictment validly charges an offense under the Act and Regulations is the following:

V. The Government established each essential element of the offense beyond a reasonable doubt.

## GENERAL FINDING

The General Finding of the Court as trier of the facts must be that defendant is guilty as charged, and it will be so found when defendant returns into court for the rendering of the decision.

■ However, in view of the conclusions reached on the issues of law, it will be in order for defendant, when the General Finding is given, to move under Rule 34 in arrest of judgment on the General Finding (see United States v. Green, 1956, 350 U.S. 415, 76 S.Ct. 522, 100 L.Ed. 494; United States v. Foster, 1914, 233 U.S. 515, 34 S.Ct. 666, 58 L.Ed. 1074; *cf.* United States v. Mersky, 2d Cir. 1958, 261 F.2d 40, 1960, 361 U.S. 431, 437–438, 80 S.Ct. 459, 4 L.Ed.2d 423; United States v. Zisblatt, 2d Cir. 1949, 172 F.2d 740) and then to renew formally the Pre-trial motion in bar (Tr. 346 "renew our motions to quash the indictment"). See United States v. Sisson, D.Mass. April 1, 1969, 297 F.Supp. 902; *cf.* United States v. Zisblatt, *supra*; 18 U.S.C. § 3731.

## APPENDIX A

3. That the validity of the delinquency regulations if properly open to challenge at the trial will on ordinary principles of law, raise a grave issue is evident. It is not that military service or induction into it can be regarded as punitive. The legally cognizable interest involved is the interest in being inducted only in the statutory circumstances, after a proper review by the local board of any relevant claims to deferment or exemption (all of which exist in the public interest and not primarily as individual privileges), and in the order of induction established by regulations which are law-ful under the statute. The delinquency regulations empower the local board to declare a registrant delinquent for failure to perform any duty required of him under the Act (other than reporting for induction or civilian work). 32 C.F.R. §§ 1602.4, 1642.1, 1642.2, 1642.4(a). The registrant's duties embrace not only the primary ones of registration, submission to specific directions to report (as for examination), and submission to induction, but also secondary duties that in some instances do no more than facilitate administration of the system and in others are more evidently in some form indispensable to effective administration of the law. Some of the duties are expressed in such terms that literal interpretation of them is impossible, and they invite judgmatical approximations of compliance that could easily be wrong. *E. g.*, 32 C.F.R. § 1617.1 (have registration "in his personal possession at all times"); § 1641.3 ("keep local board advised at all times of the address where mail will reach him"); § 1641.7(a) (keeping local board currently informed of status in a manifold of respects). Although the imposed duties range widely in importance and in the inherent probability that non-compliance will be willful or will be damaging to the just administration of the selective service system, if there is any failure to perform any duty, "the local board may declare [the registrant] to be a delinquent" whether the failure is the result of innocent inadvertence, reasonable misinterpretation, negligence, willful disobedience rooted in principle, or malign evasion. 32 C.F.R. § 1642.4(a). There are no degrees of delinquency. No standards prescribe the particular occasions when the power is to be exerted, or what findings of gravity, of willfulness, of penitence, of reparation are relevant to deciding whether or not to declare the registrant delinquent. It does not help that the regulations may not be insupportably vague in describing the duties imposed. The fault is in the absence of any standard or guide to the evaluation of the importance of the omitted duty

and the guilt-character of the omission to perform it.

If the declaration of delinquency were only a first stage to be followed by an ordered and sortable set of governmental responses, the arbitrariness of the regulations would be relieved; but the regulations contemplate only one kind of delinquency with one consequence for all cases in which the status is acted upon, and there is no alternative except complete remission, again by local board action taken at unbounded discretion. A registrant declared delinquent "may be removed from that status by the local board at any time." 32 C.F.R. § 1642.4 (c). No standards for removal from delinquency status are furnished. No right to be removed from the status is granted, no standards of appeal are stated. If the delinquent status is not terminated, then the local board "may" classify the registrant Class 1-A (or 1-A-O) "regardless of other circumstances" than the delinquency. 32 C.F.R. § 1642.12. No standards govern the decision. If the 1-A classification is made, and it may be extended to one who, but for a minor delinquency, would be triply deferrable for family, hardship, and occupational reasons, then the "local board shall order [the] delinquent * * * to report for induction in the manner provided in Section 1631.7 * * * unless * * * pursuant to a written request of the United States Attorney, the local board determines not to * * *." 32 C.F.R. § 1642.13. As noted above, 32 C.F.R. § 1631.7 requires the local board to place delinquents in the class to be exhausted first in responding to Notices of Call for men to be delivered for induction.

Nowhere, then, in the delinquency regulations are any standards of application or remission stated. They enunciate no delinquency policy, and invoke no part of the statute that can be argued to enunciate a Congressional policy that the delinquency regulations can be said to implement. The delinquency procedure has no statutory authorization and no Congressional support except what can be spelled out of the 1967 amendment of 50 U.S.C.App. § 456(h) (1), which recognizes the prime classes for call-up as being "delinquents and volunteers." The delinquency regulations, moreover, disregard the structure of the Act; deferments and priorities-of-induction, adopted in the public interest, are treated as if they were forfeitable personal privileges.

It would appear that unless it can be shown that settled administration and published instructions having the effect of rules or regulations have essentially turned the delinquency regulations into standardized compliance-securing procedures that are compatible with the Act and the valid substantive regulations adopted under it, they cannot be regarded as a legally sufficient authorization for reclassification or priority-of-induction that would not otherwise be authorized by the Act and valid substantive regulations adopted under it. *Cf.* Panama Refining Co. v. Ryan, 1935, 293 U.S. 388, 428, 55 S.Ct. 241, 79 L.Ed. 446 et seq.; Zemel v. Rusk, 1965, 381 U.S. 1, 17–18, 85 S.Ct. 1271, 14 L.Ed.2d 179.